In re the MARRIAGE OF Pamela
Renee CLUCK and Scott Max
Cluck.

Pamela Renee Cluck, Petitioner–
Respondent,

v.

Scott Max Cluck, Respondent–
Appellant.

No. 25288.

Missouri Court of Appeals,
Southern District,
Division Two.

Dec. 1, 2003.

King E. Sidwell, Blanton, Rice, Sidwell, Nickell & Cozean, L.L.C., Sikeston, for appellant.

Andrew C. Bullard, Bullard & Bullard, Kennett, for respondent.

NANCY STEFFEN RAHMEYER, Chief Judge.

Scott Max Cluck ("Father") appeals the trial court's judgment dissolving the marriage between Pamela Renee Cluck ("Mother") and himself, claiming that, in drafting the judgment of dissolution, the trial court committed error in four respects. Specifically, Father alleges that the trial court erred: (1) by failing to make written findings, as required by § 452.375.6,[1] detailing the specific § 452.375.2 factors that indicated that the trial court's custody order was in the best interest of the minor child; (2) by designating specific time-frames for visitation which limited Father's time with the minor child due to the demands of Father's military career and the considerable distance between Father's home and the home of the minor child;[2] (3) by adopting a parenting plan that failed to set forth all of the specific terms required by § 452.310.7; and (4) by ordering Father to provide alternate medical coverage different from that available through his employment without any evidence of the factors of § 454.603.2. We agree that the judgment fails to set forth the necessary findings as indicated by sections 452.375.2(6), 452.375.6, 452.375.9, 452.310.7, and 452.310. Because of the failure of the trial court to set forth any meaningful findings, we are in the position of being unable to review the trial court's parenting plan to ascertain whether sufficient evidence supports the implementation of the plan or whether it

---

1. All references to statutes are to RSMo 2000, unless otherwise indicated.

2. Father lives in Dalzell, South Carolina, where he is stationed at the Shaw Air Force Base. The minor child lives in Gideon, Missouri, where Mother relocated following her separation from Father, but prior to the formal dissolution decree. The driving distance between Dalzell, South Carolina and Gideon, Missouri is approximately 13 hours. As there is no airline service to Gideon, the parties agree that the nearest airport is in either Memphis, Tennessee or Nashville, Tennessee.

complies with the appropriate statutes. We thus reverse and remand with instructions to the trial court to make the requisite findings and to implement them into an appropriate parenting plan.

■ In his first point on appeal, Father alleges error in the trial court's failure to make written findings pursuant to § 452.375.6 regarding the specific relevant factors that made the parenting plan chosen by the court in the best interest of the child. If the parties have not agreed to a custodial arrangement, § 452.375.6 directs the trial court to § 452.375.2, where the trial court is then instructed to set forth the specific relevant factors that indicate that a particular arrangement is in the best interest of the child. Section 452.375.2 establishes eight factors for the trial court to contemplate in determining custody to be in the best interest of the minor child, including:

(1) The wishes of the child's parents as to custody and the proposed parenting plan submitted by both parties;

(2) The needs of the child for a frequent, continuing and meaningful relationship with both parents and the ability and willingness of parents to actively perform their functions as mother and father for the needs of the child;

(3) The interaction and interrelationship of the child with parents, siblings, and any other person who may significantly affect the child's best interests;

(4) Which parent is more likely to allow the child frequent, continuing and meaningful contact with the other parent;

(5) The child's adjustment to the child's home, school, and community;

(6) The mental and physical health of all individuals involved, including any history of abuse of any individuals involved. If the court finds that a pattern of domestic violence has occurred, and, if the court also finds that awarding custody to the abusive parent is in the best interest of the child, then the court shall enter written findings of fact and conclusions of law. Custody and visitation rights shall be ordered in a manner that best protects the child and the parent or other family or household member who is the victim of domestic violence from any further harm;

(7) The intention of either parent to relocate the principal residence of the child; and

(8) The wishes of a child as to the child's custodian.

■ While the trial court is not obligated to discuss any particular factor unless it is relevant, or to give greater weight to one factor than to another, in this case the trial court entered only one finding related to the conduct of the parties. The court found that "[t]here is no demonstration in the Record that the parties are, at the present time, able to communicate and cooperate with each other in making shared decisions regarding the child. The Petitioner, therefore, is vested with legal custody of the child. The parties are vested with joint physical custody of the child." Inasmuch as this sole finding gives us little guidance, we will discuss the factual background of the case to the extent necessary to establish the obvious interplay between the lack of findings by the court and the reasonableness of the custody plan.

Father, a Master Sergeant in the United States Air Force, and Mother were married in 1992, and one child was born to the marriage in 1999. During the six months immediately preceding the filing of the Petition for Dissolution of Marriage, the minor child lived in Dalzell, South Carolina, where Father was stationed at the

Shaw Air Force Base.[3] The parties do not dispute that the marriage was troubled; however, Father and Mother planned a trip to Missouri to visit with family upon Father's return from active duty in Saudi Arabia. At some point, Mother made the decision not to return to South Carolina with Father, but Father was unaware of this decision until Mother refused to return to South Carolina with him. Mother subsequently filed for the dissolution in Gideon, Missouri. There was no dispute that Father and Mother live thirteen hours from each other and that there is no air service to Mother's home. Furthermore, there was nothing in the parenting plan that indicated that Mother had any responsibility for transportation to and from the visitation. Father has thirty days of vacation leave per year, and in order to take advantage of any weekend visitation or twelve-hour holiday visitation, he would have to use two days of vacation leave per visit. The parenting plan provides Father with only twelve-hours visitation for Father's Day and major holidays. Although Father has three nonconsecutive weeks of summer visitation, after the child begins kindergarten, if Mother does not agree to the summer visitation schedule proposed by Father, then he must take visitation during the first weeks of June, July, and August regardless of his work schedule.

At trial, both parties agreed that there had been instances of domestic violence in the home, but they disagreed as to which party was the aggressor and which party was the victim. Mother alleged that Father restrained her and shook her on one occasion, while Father avers Mother hurled a coffee can at him in a fit of anger. Contrary to § 452.375.2(6),[4] the trial court made no findings of fact on the issue of domestic violence. From the record, we are unable to discern whether the trial court did not find any of the instances credible, determined all of the instances to be exaggerated, or did not believe that any of the incidents constituted a "pattern of domestic violence." *See Williams v. Williams,* 55 S.W.3d 405, 413 (Mo.App. W.D.2001); *Couch v. Couch,* 978 S.W.2d 505, 510 (Mo.App. W.D.1998); *Baker v. Baker,* 923 S.W.2d 346, 348 (Mo.App. E.D. 1996). Inasmuch as the trial court awarded joint custody in this case—a custody award that, in a different situation, would indicate that the court found no pattern of domestic violence—the parenting plan similarly fails to shed light upon the court's resolution. In this instance, when the parenting plan is clearly a hardship on Father, a different interpretation could be given to the plan. By itself, this deficiency in the parenting plan mandates findings by the trial court to ensure a meaningful review.

Likewise, there was a sharp divergence concerning the evidence of which parent would allow frequent, continuing, and meaningful contact with the child and the other parent.[5] Father alleged that Mother

---

3. Father did not contest at trial, nor does he contest now, that the Missouri court had jurisdiction to decide the custody of the minor child.

4. Section 452.375.2(6) requires the trial court to consider, among other things:
   The mental and physical health of all individuals involved, including any history of abuse of any individuals involved. If the court finds that a pattern of domestic violence has occurred, and, if the court also finds that

awarding custody to the abusive parent is in the best interest of the child, then the court shall enter written findings of fact and conclusions of law. Custody and visitation rights shall be ordered in a manner that best protects the child and the parent or other family or household member who is the victim of domestic violence from any further harm[.]

5. In Point II, we address Father's challenges to the specifics of the parenting plan.

denied him meaningful contact with the minor child and refused to allow him phone contact and information concerning the child's day-to-day issues. Prior to the separation of the parties, when Father was deployed to Saudi Arabia, he spoke to Mother by telephone almost every night and talked to the minor child when he was awake. Mother admitted that she had an unlisted phone number which she refused to provide to Father and that she required that all visitation be arranged through her mother ("Grandmother"); however, she nonetheless claimed that she facilitated visitation or telephone contact every time it was requested by Father. Again, given the considerable geographic distance between the parties and the unworkable nature of the parenting plan, it is difficult to ascertain whether the trial court found either of the parent's testimony to be credible.

One of the critical factors the court must consider is which parent will *encourage* a frequent, continuing, and meaningful relationship with the other party. § 452.375.2(4). Mother's own testimony belies a willingness to allow frequent, continuing, and meaningful contact between Father and the child. Depending on the other factors under § 452.375.2, the trial court may have abused its discretion in finding that Mother was fostering a healthy parent-child relationship by requiring Father to first request contact with the minor child by either phoning or emailing Grandmother, and then to wait for a return call from Mother before he could speak to his son; however, the court may have found Mother's behavior to be short-term and not limiting to meaningful contact between Father and the child. Again, the lack of findings hinders our review.

In requesting joint legal and physical custody of the child with alternate blocks of custody and visitation, Father submitted that his working hours were from 7:30 a.m. to 4:30 p.m., that the military provides extensive support programs for single parents, and that his next reassignment would be more flexible. He requested that the custody award provide him with substantial periods of visitation at his residence before the child reached school age as well as substantial periods of visitation during the summers after the child begins school. While the trial court effectively denied Father's request in its judgment and dissolution decree, it did not provide any findings of fact that would grant us insight into the reasons behind this denial. Consequently, Father's first point is meritorious, and mandates that we reverse and remand for findings pursuant to sections 452.375.2 and 452.375.6.

In his second and third points, Father complains that, as a practical matter, the parenting plan ordered by the court is not workable due to the considerable geographic distance between the parties, as well as the plan's failure to supply mandated terms and to provide frequent and meaningful contact pursuant to § 452.375. Again, for the reasons set forth in Point I, we agree.

Section 452.375.3 provides that:

> It is the public policy of [Missouri] to assure children frequent and meaningful contact with both parents after the parents have separated or dissolved their marriage.... In order to effectuate this policy, the court shall determine the custody arrangements which will best assure ... such frequent and meaningful contact between the child and each parent, as in indicated in the best interests of the child under all relevant circumstances.

*Roundtree v. Belk,* 879 S.W.2d 773, 775 (Mo.App. S.D.1994)(quoting RSMo § 452.375.3 (Supp.1993)). Furthermore,

§ 452.375.9 provides that "[a]ny judgment providing for custody shall include a specific written parenting plan setting forth the terms of such parenting plan arrangements specified in subsection 7 of section 452.310." Section 452.310 sets out arrangements that must be covered in every parenting plan, including specific arrangements regarding custody, visitation, and residential time, as well as specifics detailing how the decision-making responsibilities will be shared by the parents.

Among other errors, the parenting plan failed to designate the residence of one of the parents as the address of the child for mailing and educational purposes, to provide days and times to facilitate telephone calls, to make provisions for vacation periods from school, and to state the location where the exchange of the child would occur. While we agree that it is troubling that the court provided that Father bear all the costs of transportation for visitation, allowed Mother to unilaterally make all decisions, and failed to indicate any change in the schedule as the child matures or commences school, our primary concern, as indicted in our discussion in Point I, is that the absence of findings by the trial court hinders meaningful review of the parenting plan. Again, the sole finding of the trial court indicated that the parties were unable to communicate. Standing alone, that finding would not justify a limitation on Father's visitation. We must remand to the trial court with directions to prepare a parenting plan in compliance with the statutory provisions in order that we may provide meaningful review. *See Davidson v. Fisher*, 96 S.W.3d 160 (Mo.App. W.D.2003); *In Re Marriage of Parmenter*, 81 S.W.3d 234 (Mo.App. S.D.2002).

■ Finally, in his fourth point, Father alleges error in the judgment concerning the payment of medical insurance. The trial court ordered Father to provide

military or civilian major medical insurance coverage including doctor, hospital, drug, orthodontic, and eyeglass coverage insuring the minor child and each party shall pay one-half of such expenses not covered by the major medical insurance. Provided, however, the said policy of insurance shall be one accepted by medical providers within a 60–mile radius of [Mother's] residence.

There was absolutely no evidence adduced at trial concerning the cost of any major medical insurance policy that covered all of those items, nor was there evidence as to the extent of the coverage provided by Father's military insurance policy. Instead, the judgment imposed an ill-defined requirement that Father provide civilian major medical coverage for medical services that may be unavailable through the military, while making no findings regarding the reasonableness of the cost. Clearly, neither the surplus language regarding medical coverage nor the specific provisions regarding the type of coverage available through the military were supported by the evidence. We reverse that portion of the judgment and on remand, the trial court, in accordance with § 454.603.2, shall amend the judgment to specifically require Father to provide coverage for the child under Father's military medical policy, to include doctor, hospital, drug, orthodontic, and eyeglass coverage if available. Additionally, if the insurance policy is accepted by medical providers within a 60–mile radius of Mother's residence, Mother will pay all medical expenses that occur if she chooses to take the child to a provider who does not accept the policy.[6] However, if

---

6. As best as we can decipher, this is the result that the trial court intended to reach with its

verbiage regarding the "60–mile radius of [Mother's] residence." Because we are un-

the insurance policy is accepted by medical providers within a 60–mile radius of Mother's residence, but the child incurs medical expenses that exceed the coverage provided by the policy, then Father and Mother shall each pay-one half of the expenses incurred by the child. Similarly, if the insurance policy is *not* accepted by any medical provider within a 60–mile radius of Mother's residence, then Father and Mother shall each pay one-half of all medical expenses. Any provisions of the trial court's order that are inconsistent with our instructions shall be stricken.[7]

With respect to the parenting plan, the judgment of dissolution is reversed and remanded with instructions to the trial court to make findings in conformance with sections 452.375.2, 452.375.6, 452.375.9, 452.310.7, and 452.310, and to develop an appropriate parenting plan. The judgment concerning the provisions for payment of medical expenses is reversed and remanded in accordance with our opinion herein. In all other respects the judgment is affirmed.

PARRISH and SHRUM, JJ., concur.

clear as to the intent of trial court, and because we had to strain to give meaning to this provision, we remand with instructions that the trial court clarify this portion of its order.

7. Although not included in any of Father's points relied on, we note that, in his Motion to Set Aside Judgment and for Rehearing or, in the Alternative, for New Trial, Father identified several other deficiencies in the trial court's decree, including a deficiency in the minor child's relevant identification data. *Any alleged deficiencies in the judgment* should be addressed in the new judgment.