**Dirk A. DUNKLE, Respondent,**

v.

**Jacqueline S. DUNKLE, Appellant.**

**No. ED 84272.**

Missouri Court of Appeals,
Eastern District,
Division Five.

March 29, 2005.

Daniel R. Schramm, Chesterfield, MO, for appellant.

Daniel P. Card II, Jefferson City, MO, for respondent.

Michael C. Todt, St. Charles, MO, co-counsel for respondent.

## OPINION

GLENN A. NORTON, Presiding Judge.

Jacqueline Dunkle ("Mother") appeals the trial court's judgment of dissolution that awarded Dirk Dunkle ("Father") sole physical and legal custody of their two children. We affirm in part and reverse in part.

## I. BACKGROUND

Mother and Father were married and had two children. They lived with their children in the St. Louis area, but eventually they separated and Father filed a petition for dissolution. Before trial, the trial court entered two successive *pendente lite* ("PDL") judgments that set forth shared custody arrangements, the first requiring Mother's periods of custody to be supervised and the second allowing unsupervised custody. Father filed a motion to modify the second PDL judgment, indicating that he had already accepted a new job in Columbia, Missouri, that he planned to move there with the children in a few days and that he sought to modify the existing PDL judgment "so that visitation with [Mother] continues in accordance with the new location of the children's residence."

Three weeks later, which was about one month before trial, and by consent of the parties, the court entered an amended PDL judgment that gave Father custody of the children during the week, while Mother had custody on all but one weekend up until the time of trial. The judgment stated that "[t]he parties stipulate that this amended PDL judgment shall not be precedent in the trial of the dissolution. The court shall not consider this in making its decision relative to custody."

The dissolution case was tried before a family court commissioner, who heard evidence from numerous witnesses including Mother, Father and the children's guardian *ad litem*. According to the guardian, both parents were capable of exercising physical custody, but in light of Father's move the guardian did not make a recommendation to the court regarding physical custody. The guardian generally expressed some concern about whether Father would be cooperative if given sole custody, given his move to Columbia and his position that joint legal custody was not appropriate. But the guardian also had reservations about Mother's continuing need to properly take medication and

be monitored. Both parties agree that Mother, who took primary responsibility for child care until the onset of her illness, suffers from bipolar personality disorder and must take certain medications regularly. The commissioner found that Mother's disorder did not interfere with her parenting abilities and that Father's attempts to portray her as mentally unbalanced were "pathetic." There was also sharply disputed evidence regarding whether Mother had coached her daughter to make allegations of sexual abuse against the son of Father's girlfriend.

The circuit court entered a judgment of dissolution confirming the commissioner's findings on December 4, 2003. After noting that the issue of custody was "a close one," the court awarded Father sole physical and legal custody of the children and gave Mother visitation on alternating weekends and holidays and for one-half of the summer. The court mailed notice of the judgment to the parties on December 8, 2003. On December 30, 2003, Mother filed a "Motion to Amend the Judgment or, in the Alternative, for a New Trial." The court denied her motion on March 3, 2004, treating it as an untimely motion for rehearing under Rule 129.13(a)[1] because it was not filed within 15 days of the court's mailing.[2] On March 12, 2004, Mother filed her notice of appeal.

## II. DISCUSSION

### A. Jurisdiction

■ Father moves to dismiss this appeal for lack of jurisdiction, arguing that Mother's notice of appeal was untimely filed. We disagree. Whether this court has jurisdiction is a question of law that we review *de novo*. *Bounds v. O'Brien*, 134 S.W.3d 666, 670 (Mo.App. E.D.2004).

■ Under the normal civil procedure rules, a motion for new trial and a motion to amend the judgment are both considered "authorized after-trial motions," which, if timely filed, extend a trial court's control over its judgment from 30 days up to 90 days. *See Puisis v. Puisis*, 90 S.W.3d 169, 171–72 (Mo.App. E.D.2002) (citing Rule 78.06, Rule 81.05 and *Taylor v. United Parcel Service, Inc.*, 854 S.W.2d 390, 393 n. 1 (Mo. banc 1993)). Rule 78.04, formerly Rule 73.01(a)(4)-(5) (1999), permits the filing of a motion for new trial or a motion to amend the judgment within 30 days after the judgment is entered. If filed within that time, the court has up to 90 days in which to rule on those motions, after which they are deemed overruled. Rule 78.06; Rule 81.05(a)(2).

But special rules exist for certain juvenile and family law matters tried before a family court commissioner, and these rules supersede all inconsistent statutes and court rules. Rule 129.01; Rule 129.02. In such cases, a party "may file a motion for rehearing by a judge of the court" within 15 days from when the court mailed notice of its judgment. Rule 129.13(a).[3] The judge is then obligated to rule on the motion for rehearing promptly, otherwise it is deemed overruled after 45 days. Rule 129.13(b).

---

1. Unless otherwise indicated, all rule references are to the Missouri Court Rules (2003) and statutory references are to RSMo 2000.

2. The court further stated that even if the motion had been timely filed, under Rule 129.13(b) it was overruled by operation of law 45 days after it was filed.

3. A rehearing before the commissioner can also be obtained, either upon a party's request or upon the judge's own motion. Rule 129.11.

Here, Mother's "Motion to Amend the Judgment or, in the Alternative, for a New Trial" was filed more than 15 days after the court mailed its notice of the judgment but less than 30 days after the judgment was entered. Father contends that Rule 78.04 only applies in cases heard before an Article V judge and that Rule 129.13 applies here because it is inconsistent with and therefore supersedes Rule 78.04 in its entirety. If Father is correct, then a motion seeking the relief authorized by Rule 78.04 would have no effect and Mother's motion would be treated as an untimely motion for rehearing under Rule 129.13. There being no other basis for extending the time for appeal, the judgment would have become final 30 days after it was entered and her notice of appeal, which was filed more than ten days later, would be untimely. *See* Rule 75.01; Rule 81.05(a)(1); Rule 81.04(a). An untimely notice of appeal would require us to dismiss the appeal for lack of jurisdiction. *Rogiers v. Boatmen's Trust Co.*, 918 S.W.2d 285, 286 (Mo.App. E.D.1996).

Mother argues, on the other hand, that there is no inherent inconsistency between the "permissive right" to seek a rehearing under Rule 129.13 and the "alternative remedy" of asking the judge to amend the judgment or order a new trial under Rule 78.04. She contends, therefore, that her motion seeking an amended judgment or a new trial was timely filed and extended the court's jurisdiction over the matter for up to 90 days. *See* Rule 78.04; Rule 81.05(a)(2). Since the court ruled on her motion within that time, the judgment became final upon the court's ruling and her notice of appeal, which she filed within ten days of that ruling, would have been timely filed, giving this Court jurisdiction over the appeal. *See* Rule 81.05(a)(2)(B); Rule 81.04(a).

No court has squarely addressed the issue presented here: whether the deadlines applicable to motions for rehearing under Rule 129.13 are inconsistent with, and therefore supersede, the normal deadlines applicable to motions for new trial and other authorized after-trial motions under Rule 78.04, Rule 78.06 and Rule 81.05. Prior decisions, however, have implicitly found the two sets of rules to be inconsistent insofar as they relate to a motion for *new trial.* We take this opportunity to expressly articulate the inconsistency that until now has only been implicitly recognized. Still, we find no inconsistency with respect to a motion to *amend the judgment.*

In *Washington v. Washington,* this Court used Rule 129.13, not Rule 78.04, to analyze a motion similar to the one here, finding it untimely. 18 S.W.3d 44, 45–46 (Mo.App. E.D.2000). Although the motion in that case was styled as a motion for new trial and the trial court purported to grant a new trial, on appeal this Court treated it as a motion for rehearing in order to be "[c]onsistent with Rule 129." *Id.* at 45 n. 1. The motion had been filed more than 15 days after notice of the court's original judgment was sent to the parties, so this Court found the motion untimely under Rule 129.13(a). *Id.* at 46. And even if the motion for rehearing had been timely filed, it would have been deemed overruled for all purposes once the court failed to rule on it within 45 days. *Id.* (citing Rule 129.13(b)).

The Court specifically did not reach the issue of whether the trial court could have granted a rehearing or new trial on its own motion within 30 days of the judgment under Rule 75.01. *Washington,* 18 S.W.3d at 46 n. 2. Nor did the opinion mention Rule 78.04, Rule 78.06, or Rule 81.05. But *Washington* implicitly found the two sets of rules to be at least somewhat inconsis-

tent. Had the Court treated the motion in *Washington* as a motion for new trial under Rule 78.04, its analysis of the jurisdictional question would have been different because the motion was timely filed under that rule,[4] and as a timely authorized after-trial motion it would have extended the trial court's jurisdiction enough to allow the trial court to properly grant the "rehearing."[5] *See* Rule 81.05(a)(2). By expressly treating the motion as one for rehearing in order to be "[c]onsistent with Rule 129," the Court implicitly recognized that the normal civil procedure rules are inconsistent with Rule 129.13 as to the filing of a motion for new trial. *See id.* at 45 n. 1.

We also find guidance in another case that applied the deadlines of Rule 129.13 instead of the normal civil procedure rules. *See State ex rel. Harper v. Goeke*, 12 S.W.3d 717, 718–20 (Mo.App. E.D.1999). In *Harper*, this Court treated a "Motion for Hearing Before Judge" as a motion for rehearing under Rule 129.13. *Id.* Although it appears that one of the parties had argued against treating the motion as one for new trial under Rule 73.01(a)(4) (1999), the predecessor to current Rule 78.04, the Court did not analyze that possibility. *Id.* at 718. The timeliness of the motion was not at issue in *Harper* because it was filed within 15 days of the trial court's mailing, but this Court found that it was deemed to be overruled 45 days after it was filed. *Id.* at 719–20. At that time, the original judgment became final and appealable and the trial court lost jurisdiction to later enter an amended judgment. *Id.*

Like *Washington*, *Harper* suggests that the two sets of rules are inconsistent. If the motion in *Harper* had qualified as a motion for new trial under the normal rules of civil procedure, then the analysis would have been different because the Court would have had to rely on its alternate basis for holding that the trial court lacked jurisdiction to enter the amended judgment.[6] Under Rule 81.05(a)(2), the motion would have constituted an authorized after-trial motion that extended the trial court's jurisdiction beyond when it entered the amended judgment.[7] The Court's decision not to address whether the motion qualified as a motion for new trial lends further support to the notion that those rules are inconsistent with Rule 129.13.

In support of her argument that we have jurisdiction over this appeal, Mother primarily relies on *Johnson v. Johnson*,

---

4. The court's original judgment was entered February 11, 1999. *Washington*, 18 S.W.3d at 45. Since the 30th day after the judgment was Saturday, March 13, 1999, the motion filed that following Monday, March 15, 1999, would have been timely under Rule 78.04. *See id.;* Rule 44.01(a).

5. The trial court purported to grant a "rehearing" on June 7, 1999, which was within 90 days of the motion filed on March 15, 1999. *See id.* at 45.

6. This Court gave two reasons for finding that the trial court lacked jurisdiction to enter an amended judgment. *Harper*, 12 S.W.3d at 719–20. First, the motion was overruled by virtue of Rule 129.13(b) on April 25, 1999, 45 days after its filing on March 11, 1999. *Id.* at 719–20. Second, a notice of appeal had been filed on May 5, 1999, in response to the trial court's original judgment, thereby cutting off the trial court's jurisdiction to perform anything except ministerial functions. *Id.* at 720. Therefore, the trial court lacked jurisdiction to later enter its amended judgment on May 21, 1999, and this Court set aside that amended judgment via an order in prohibition. *Id.* at 718–20.

7. If the Court had used the normal civil procedure rules, the amended judgment of May 21, 1999 was entered well before June 9, 1999, the 90th day after the motion was filed. *See id;* Rule 81.05(a)(2).

which applied both sets of deadlines in a case heard before a family court commissioner. 122 S.W.3d 613, 614 (Mo.App. E.D.2003). But *Johnson* did not address—nor implicitly recognize—any inconsistency between the normal civil procedure rules and Rule 129.13 because the notice of appeal was untimely under both sets of rules. *See id.* at 614–15.[8] Mother also relies on *Wilson v. Whitney*, 81 S.W.3d 172 (Mo.App. S.D.2002). There, the court treated a motion for rehearing as a motion for new trial because the motion "alleged the trial court committed errors of fact or law." *Id.* at 177–78. Without analyzing the motion under Rule 129.13, the court found the motion to be timely filed under Rule 78.04, thus allowing the trial court to enter a new judgment after further hearings. *Id.* at 177–78. But had the court analyzed the motion under Rule 129.13, it would have reached the same result because the motion was filed within 15 days of the trial court's original judgment and the court ruled on the motion by within 45 days. *See id.* at 177; Rule 129.13. Unlike *Washington* and *Harper,* the analyses in *Johnson* and *Wilson* would have been the same under either set of rules, making it unnecessary for those courts to address the inconsistency between them. They provide no guidance on that issue.

■ Our conclusion that the two sets of rules are inconsistent is further supported by the notion that, despite different terminology, a motion for rehearing·is the functional equivalent of a motion for new trial. *In the Interest of R.G.*, 885 S.W.2d 757, 765 (Mo.App. E.D.1994) (recognizing this functional equivalence in the context of a juvenile proceeding).[9] Since both Rule 78.04 and Rule 129.13 address the deadlines applicable to these functionally equivalent motions, it would be inconsistent to apply both sets of rules at the same time to the same motion. Each set of rules uses a different starting point and a different period of time in order to determine

**8.** In *Johnson,* this Court analyzed two different motions, one filed by each party, under both sets of rules and found them to have been either untimely filed or deemed overruled more than ten days before the notice of appeal was filed. *Johnson,* 122 S.W.3d at 614–15. Within 15 days of the original judgment, the appellant filed a motion for rehearing before a judge under section 487.030.2, or in the alternative, a motion for new trial under Rule 78.04. *Id.* at 614. Although the motion actually invoked section 487.030.2, the Court acknowledged that the analysis under Rule 129.13 would have been the same. *Id.* at 614 n. 3. More than 30 days after the original judgment was entered, the respondent filed a similar motion, which the trial court purported to deny in two later amended judgments. *Id.* at 614–15.

This Court analyzed these two motions using both sets of deadlines. *Id.* Treated as a motion for *rehearing,* appellant's motion would be deemed denied 45 days after it was filed based on section 487.030.2 and Rule 129.13; treated as a motion for *new trial,* that motion would be deemed denied 90 days after it was filed based on Rule 78.06 and Rule

81.05(a). *Id.* at 614. Treated as a motion for *rehearing,* respondent's motion would be deemed denied 45 days after it was filed; treated as a motion for *new trial,* that motion would be deemed untimely based on Rule 78.04. *Id.* at 615. A third motion, one to disqualify the judge, was not an authorized after-trial motion. *Id.* at 614–15. Therefore, even with the benefit of the latest possible date at which the original judgment became final and appealable, the notice of appeal was untimely because it was filed more than ten days afterward, and the amended judgments were "a legal nullity." *Id.* at 615.

**9.** Other cases have also treated these motions as interchangeable. *See In re Marriage of Echessa,* 74 S.W.3d 802, 804 n. 1 (Mo.App. S.D.2002) (treating a motion for rehearing following a judgment of dissolution as a motion for new trial); *Farmers State Bank v. Place–Wiederholt Chevrolet–Oldsmobile, Inc.,* 747 S.W.2d 170, 172 (Mo.App. W.D.1988) (treating a motion for rehearing as a motion for new trial in a court-tried case).

whether a motion was timely filed, and each set of rules gives the trial court a different amount of time in which to rule on the motions.[10]

■ Because of the inconsistency between these two sets of rules, the 15–day and 45–day deadlines on a motion for rehearing under Rule 129.13 supersede the 30–day and 90–day deadlines on a motion for new trial under Rule 78.04, Rule 78.06 and Rule 81.05(a)(2)(A). *See* Rule 129.02; *Washington,* 18 S.W.3d at 45–46; *Harper,* 12 S.W.3d at 718–20. Therefore, in a case tried before a family court commissioner under Rule 129, the applicable deadline for the filing of a motion for *new trial* or a motion for *rehearing* is 15 days from the court's mailing, and such a motion is overruled by operation of law after 45 days. Rule 129.13. However, Rule 129.13 does not directly address a motion to *amend the judgment.*

The provisions of Rule 129 only supersede those statutes and other existing court rules to the extent that Rule 129 is "inconsistent therewith." *See* Rule 129.02. Because a motion to amend the judgment is not mentioned anywhere in Rule 129, there can be no inconsistency between it and the normal civil procedure rules.

■ The Southern District has addressed a similar situation with respect to Rule 119.07, which applies in certain juvenile and family court proceedings. *See* Rule 110.01.[11] Rule 119.07 permits the filing of a motion to amend or correct the judgment within ten days but is silent as

to the filing of a motion for new trial. The court held that because the rule is silent on the filing of a motion for new trial, its ten-day limit on a motion to correct or amend the judgment does not prevent the filing of a motion for new trial within the 30–day timeframe of Rule 78.04. *In the Interest of B.W.B.,* 73 S.W.3d 894, 895 (Mo.App. S.D.2002) (citing Rule 110.04 and *In the Interest of A.K.L.,* 942 S.W.2d 953, 956 (Mo.App. S.D.1997)). Although Rule 129.13 presents the opposite scenario—it is silent on the filing of a motion to amend the judgment, but expressly limits the filing of a motion for rehearing—the same rationale applies. Because Rule 129.13 is silent as to a motion to amend the judgment, it does not supersede the normal civil procedure rules with respect to that type of motion. Thus, even in cases heard by a family court commissioner, unless Rule 119.07 applies, the parties have 30 days from the entry of the judgment in which to file a motion to amend the judgment.

■ Applying these principles to the facts of this case, we first consider the nature of Mother's motion, which was styled as a "Motion to Amend the Judgment or, in the Alternative, for a New Trial." Since the title of the motion is not dispositive, we must also consider its contents. *See In re Marriage of Echessa,* 74 S.W.3d at 804 n. 1; *Miller v. Enyeart,* 893 S.W.2d 901, 903 n. 1 (Mo.App. W.D.1995). In the motion, Mother alleges that several of the trial court's findings and conclusions were erroneous and that the judgment en-

---

10. Mother also points out that the language of Rule 129.13(a)—"a party ... may file a motion for rehearing by a judge"—is permissive. But this permissive language merely indicates that the filing of a motion for rehearing is not a mandatory requirement; it does not suggest that Rule 129.13 was intended to create a new after-trial remedy that should be analyzed separately from a motion for new trial.

11. "Rules 110 through 128 shall govern practice and procedure in the juvenile and family courts under sections 210.125, 210.160, 210.166, 210.700 to 210.760, RSMo, and chapter 211, RSMo." Rule 110.01.

tered does not conform to the evidence submitted at trial. While she does not mention a specific rule anywhere in the motion, the title of the motion and its contents invoke the relief authorized by Rule 78.04—a new trial or an amended judgment.[12] Therefore, we will treat the motion both as a motion for new trial and as a motion to amend the judgment.[13] *See Hart,* 152 S.W.3d at 425–26 (finding that a single motion qualified as both a motion to amend the judgment and a motion for new trial).

To the extent that the motion sought a new trial or a rehearing before the court, under Rule 129.13(a) it was due within 15 days from when the court mailed notice of its judgment. Since the motion was more than 15 days after the court's mailing, it was untimely. Were there no other basis for extending the time for appeal, the judgment would have become final 30 days after it was entered and Mother's notice of appeal, which was filed more than ten days later, would be untimely. *See* Rule 75.01; Rule 81.05(a)(1); Rule 81.04(a).

But to the extent that the motion sought to amend the judgment, it was timely under Rule 78.04 because it was filed less than 30 days after the trial court entered its judgment. As a timely authorized after-trial motion, it extended the trial court's jurisdiction for up to 90 days. *See* Rule 81.05(a)(2). Within that time, the trial court denied her motion, and given that there were no other motions to rule on, the judgment became final at that time. *See* Rule 81.05(a)(2)(B). Therefore, Mother's notice of appeal, filed less than ten days later, was timely. *See* Rule 81.04(a).

Father's motion to dismiss for lack of jurisdiction is denied.

## B. Child Custody & Visitation

■ Mother's three points on appeal challenge the trial court's determinations regarding physical custody, legal custody and visitation. Our review of this judgment of dissolution is governed by *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). We must affirm the trial court's custody determination unless it is not supported by substantial evidence, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. *Abbott v. Perez,* 140 S.W.3d 283, 290 (Mo.App. E.D.2004).

■ Substantial evidence means "competent evidence from which the trial court could reasonably decide the case." *Bauer v. Bauer,* 38 S.W.3d 449, 455 (Mo. App. W.D.2001). We defer to the trial court's superior ability to assess the credibility of witnesses and view all facts and

---

**12.** We acknowledge that there is support for the notion that Mother's failure to specifically rely on Rule 78.04 "is sufficient, in itself, to deny h[er] the benefits of that rule." *Koppenaal v. Director of Revenue,* 987 S.W.2d 446, 451 (Mo.App. W.D.1999) (citing Rule 73.01(a)(5) (1998), the former rule relating to a motion to amend the judgment); *see also Wooten v. Williams,* 827 S.W.2d 282, 284 n. 2 (Mo.App. E.D.1992); *contra Blue Ridge Bank and Trust Co. v. Hart,* 152 S.W.3d 420, 425 (Mo.App. W.D.2005). Since such denial is not required, we decline to do so here.

**13.** Neither party contends that this motion cannot or should not be treated as a motion to amend the judgment under Rule 78.04, and we see no reason why it should not be so treated. This is especially true where, as here, doing so gives us jurisdiction to review this case on the merits, which we have a duty to undertake "in every instance that [we] may properly do so." *Wills v. Whitlock,* 139 S.W.3d 643, 658 (Mo.App. W.D.2004) (quoting City of Lake Winnebago v. Sharp, 652 S.W.2d 118, 122 (Mo. banc 1983)); *see also Hoenig v. Corrigan Bros., Inc.,* 983 S.W.2d 526, 528 (Mo.App. E.D.1998) ("Rules should be liberally construed in favor of permitting appeals to proceed.").

reasonable inferences in a light most favorable to its decision. *Abbott*, 140 S.W.3d at 290. With respect to custody and visitation issues, the trial court has broad discretion, and we give even greater deference to these decisions than in other civil cases. *Id.* at 290–91. We do not reweigh the evidence, even if the evidence could have supported another conclusion. *See St. Lawrence v. St. Lawrence*, 109 S.W.3d 225, 226 (Mo.App. E.D.2003). We presume that the court awarded custody in accordance with the children's best interests after reviewing all of the evidence and we will reverse its decision only if we are firmly convinced that the welfare and best interests of the children require otherwise. *Malawey v. Malawey*, 137 S.W.3d 518, 522 (Mo.App. E.D.2004).

The trial court's initial child custody determination must be made in accordance with the best interests of the child after considering all relevant factors, including eight specific statutory factors. *See* section 452.375.2(1)-(8). The court must also consider several different custodial arrangements under section 452.375.5. When the parties do not agree on a custodial arrangement, the trial court's judgment must include a written finding, based on the public policy stated in section 452.375.4 [14] and each of the factors listed in section 452.375.2(1)-(8), "detailing the specific *relevant* factors that made a particular arrangement in the best interest of the child." Section 452.375.6 (emphasis added); *see also Cunningham v. Cunning-*

ham, 143 S.W.3d 647, 649–50 (Mo.App. E.D.2004). Additionally, if the trial court rejects a proposed custodial arrangement, it must include a written finding in the judgment "detailing the specific *relevant* factors resulting in the rejection of such arrangement." Section 452.375.6 (emphasis added); *see also Cunningham*, 143 S.W.3d 647 at 650. The trial court is not, however, required "to do a complete 'laundry list' of the statutory factors" under section 452.375.2(1)-(8). *Foeste v. Foeste*, 122 S.W.3d 698, 701 (Mo.App. E.D.2003). Instead, it must only address in detail those factors that it considered particularly relevant to its custody determination. *Id.; Speer v. Colon*, 155 S.W.3d 60, 62 (Mo. banc 2005).[15]

## 1. Physical Custody

Mother challenges the trial court's award of sole physical custody to Father. She acknowledges that the court addressed the statutory factors relevant to its custody decision under section 452.375.2(1)-(8), but argues that the court misapplied those factors because its findings were inconsistent, overlooked important issues, or lacked evidentiary support. She also argues that the court failed to properly address Father's relocation to Columbia. Thus, she alleges that the court abused its discretion, that it misapplied the law and that its decision was not supported by substantial evidence for a variety of reasons, the cumulative effect of

---

**14.** "[I]t is the public policy of this state that frequent, continuing and meaningful contact with both parents after the parents have separated or dissolved their marriage is in the best interest of the child" unless the court makes specific findings that such contact is not in the child's best interest. Section 452.375.4. Also as a matter of public policy, parents are encouraged to participate in decisions affecting their children and to use alternative dispute resolution. *Id.*

**15.** The Missouri Supreme Court also noted that under the new Rule 78.07(c) (2005), " '[i]n all cases, allegations of error relating to the form or language of the judgment, including the failure to make statutorily required findings, must be raised in a motion to amend the judgment in order to be preserved for appellate review.' " *Speer*, 155 S.W.3d at 62 n. 9.

which requires reversal in this "very close case." We disagree.

### (a) Relocation

In its judgment, the trial court's only finding with respect to relocation was its recognition that Mother wanted the children to reside with her in St. Louis County, while Father wanted them to reside with him in Columbia. Mother argues that the court erred by failing to make specific findings under sections 452.375.2(7) and 452.377.9 with respect to Father's relocation to Columbia, and by doing so, contravened the parties' stipulation as recognized in the last PDL judgment.

### (i) Effect of the Parties' Stipulation and the Last PDL Judgment

Mother argues that the court improperly acted "in contravention of the parties' stipulation" and the last PDL judgment by considering Mother's consent to Father temporarily having primary custody of the children in Columbia shortly before trial. She argues that because she only consented on the condition that it would not be precedent in their dissolution case and the trial court would not consider it in making its final custody decision, the trial court still had an obligation to address the statutory relocation issues. Because it did not do so, she argues that the court completely disregarded the guardian's concerns about whether Father's move was made in good faith.

We find that the judgment does not contravene the last PDL judgment, which memorialized the parties' stipulation that the temporary custody arrangements it set forth would not be considered precedential with respect to the final custody decision.

While the court found that Mother's willingness to allow Father to care for the children in Columbia "undercuts her claim that [Father] cannot adequately care for the children on his own," it also found that Father's willingness to allow Mother unsupervised custody on weekends "undercuts his claim that [Mother] is too unstable to have custody of the children." These findings were made in the context of considering both parents' capability to care for the children; they do not support Mother's assertion that the court charged her with adverse consequences as a result of her consent. As discussed below, the trial court fulfilled any further obligation it had to address Father's relocation.

### (ii) Section 452.375.2(7)

In making its initial best interests determination, the trial court must consider whether either parent intends to relocate the principal residence [16] of the children. Section 452.375.2(7). Here, the court's finding suggests that this factor did not favor either party. That conclusion is supported by the evidence. At the time of the trial, the children were living with Father in Columbia under a temporary pretrial custody arrangement to which Mother had consented. Whether the trial court awarded primary physical custody to Mother or Father, the children's principal residence, which had previously been their Father's home in O'Fallon, would have to change. Their new residence would either be with Father in Columbia or with Mother elsewhere in the St. Louis area. There was no evidence that either party planned to relocate again. Since relocation was not particularly relevant to the trial court's custody determination, detailed analysis of this factor was not required. *See Speer*, 155

---

**16.** The term "principal residence" is not defined, but for purposes of sections 452.375 and 452.377, the term "relocation" refers to "a change in the principal residence of a child for a period of ninety days or more, but does not include a temporary absence from the principal residence." Section 452.377.1.

S.W.3d at 62. Under these circumstances, the trial court properly applied the law, and its finding with respect to this factor was supported by the evidence.

(iii) Section 452.377

Section 452.377 sets forth substantive standards that guide the trial court's resolution of relocation disputes. *See* section 452.377.9–.10; *Stowe v. Spence*, 41 S.W.3d 468, 469 (Mo. banc 2001). Under section 452.377, courts must find that relocation "(1) is in the best interests of the child, (2) is made in good faith, and (3) if ordered, complies with the requirements of subsection 10." *Stowe*, 41 S.W.3d at 469. Mother argues that the court's failure to make these findings was erroneous.

 Mother fails to recognize the different standards applicable to initial custody determinations and custody modifications. *See DeFreece v. DeFreece*, 69 S.W.3d 109, 113–14 (Mo.App. W.D.2002). Where the court, as here, makes its initial custody determination in accordance with the best interest factors of section 452.375.2, it is not required to make any additional findings under section 452.377 and *Stowe* with respect to relocation. *Id.*

at 114; *see also Brown v. Shannahan*, 141 S.W.3d 77, 79 (Mo.App. E.D.2004) (finding that "[s]ection 452.377 provides for modification of *existing* custody or visitation arrangements" and did not apply when mother relocated with child prior to an initial determination of paternity and custody rights) (emphasis in original); *Abbott*, 140 S.W.3d at 291–93 (allowing relocation of children in initial dissolution case based on factors in section 452.375.2 without analyzing child relocation statute).[17]

**(b) Other Statutory Best Interest Factors**

In addition to contesting the trial court's findings with respect to Father's relocation, Mother also challenges the court's findings with respect to the other best interest factors in section 452.375.2, claiming that each of its findings lacked evidentiary support, was somehow inconsistent, or overlooked important issues. We disagree.

The trial court rejected Mother's proposed parenting plan, in which she sought sole physical custody and joint legal custody. Therefore, while the court was required to make detailed findings with re-

---

**17.** Nor was the trial court required to address the notice provisions of section 452.377, which require 60 days advance notice from a custodial parent who seeks to relocate the principal residence of a child. *See* section 452.377.2. First, it appears that section 452.377 does not apply to an initial custody determination at all, even if one parent relocates before that determination is made. *See DeFreece*, 69 S.W.3d at 114; *Shannahan*, 141 S.W.3d at 79; *Abbott*, 140 S.W.3d at 291–93. Second, even if the statute's notification requirements did apply to this situation, under these circumstances Mother waived any argument that Father failed to provide adequate notice of his intent to relocate to Columbia. Although Mother refers to the notification requirements in her brief, her point on appeal, which specifically cites section 452.377.9 but not section 452.377.2, does not allege that Father failed to abide by the notice require-

ments, and we find no evidence in the record that she made this argument to the trial court. *See Siegfried v. Remaklus*, 95 S.W.3d 107, 112 (Mo.App. E.D.2001) (argument regarding faulty notice under section 452.377 not preserved where not encompassed in point relied on and not challenged in the trial court). Third, while she asserts in her brief that Father failed to notify her about the relocation according to the statute, she does not explain how such failure should have affected the trial court's ultimate custody decision. Fourth, Mother never sought to prevent the relocation. *See Weaver v. Kelling*, 53 S.W.3d 610, 616 (Mo.App. W.D.2001) ("The purpose of the notice provision of section 452.377 is to give a party entitled to custody or visitation of the child the opportunity to challenge the relocation by filing a motion seeking an order to prevent the relocation.").

spect to each of the statutory factors it deemed particularly relevant, which it did, it did not need to discuss every one of the factors. *See Speer*, 155 S.W.3d at 62. The court mentioned each of the factors in section 452.375.2(1)-(8), providing additional detail for the factors that were particularly relevant to its decision, and concluded that its award of sole legal and physical custody to Father, subject to Mother's visitation rights, was in the children's best interests. The court further listed reasons why this custodial arrangement was more appropriate than any of the others in section 452.375.5(1)-(5).

■■■ Before analyzing Mother's claims of error with respect to the remaining best interest factors, we note that when making the findings required by section 452.375.6, the trial court need not give greater weight to certain factors than to others. *See In re Marriage of Cluck*, 121 S.W.3d 271, 273 (Mo.App. S.D.2003). In other words, there is no specific formula for how a trial court must weigh the non-exclusive list of best interest factors under section 452.375.2 when making its final custody determination. *See Ludwig v. Ludwig*, 126 S.W.3d 466, 477 (Mo.App. W.D.2004) (there is no formula for how to weigh the factors under section 452.330.1). Instead, after properly considering those factors, the trial court has broad discretion to determine what arrangement is in the best interests of the children under the particular facts of each case. *See Abbott*, 140 S.W.3d at 293.

Here, the trial court's most detailed findings relate to Mother's mental health. The court was required to consider the "mental and physical health of all individuals involved, including any history of abuse." Section 452.375.2(6). The court found "overwhelming evidence" that Mother's mental illness does not interfere with her ability to take care of the children and

function as a parent. Nevertheless, the court stated that its "primary area of concern" was that Mother's caretaking ability hinged so heavily on her remaining under a doctor's care and being monitored to ensure compliance with her prescribed medications. Mother argues that the court placed undue emphasis upon this concern, which she characterizes as speculative, claiming there was no evidence that she had failed to take her medication or see her physician. But there was evidence of such failure in the past. The psychologist who evaluated Mother testified that Mother could be a safety risk to her children if she were not on her medication, which she had quit taking at least once before. In order to ensure that the medication was being taken and was functioning properly, the psychologist stated that Mother would need to consult with a professional health expert at least every two weeks. The trial court's concern was not speculative and was supported by substantial evidence. Further, the court was not required to wait and see if its concerns would become a reality. This factor strongly supports the court's decision to give Father custody, and it was within the trial court's discretion to give greater weight to this factor than to others. *See In re Marriage of Cluck*, 121 S.W.3d at 273.

The trial court also found that an additional, non-statutory factor supported giving Father custody, namely, finding Mother's conduct in reporting the possible sexual abuse of her daughter to be "suspect." Mother argues that there was no evidence to support the court's finding that Mother had done anything improper in reporting information she had received about the potential sexual abuse of her daughter and that this finding was prejudicial to the court's final decision. She points out that the social worker who tes-

tified about finding no evidence of abuse admitted during cross-examination that Mother had simply reported what the daughter told her grandmother about the alleged abuse. After hearing such evidence, the guardian *ad litem* opined that Mother did nothing improper. But the trial court was not bound by the guardian's assessment. *See In re Marriage of Horinek*, 41 S.W.3d 897, 906 (Mo.App. S.D.2001). Further, there was evidence that Mother had improperly attempted to "coach" her daughter into telling the social worker that Father's girlfriend's seven-year-old son had tried to insert a stick inside her daughter. It was within the trial court's discretion to believe that Mother's conduct was "suspect," and that further supported its decision to give Father sole physical custody.

Although the trial court initially found that there was no credible evidence that either party was less likely to allow meaningful contact with the other parent, its later findings seem to acknowledge that Father might not be the more cooperative parent. *See* section 452.375.2(4). Mother argues that those findings were inconsistent. The court also found no credible evidence that the children do not interact well with both parents, but it did not address the children's relationships with others. *See* section 452.375.2(3) (relating to the children's interactions and interrelationships with their parents and others who significantly affect their best interests). Mother argues that this finding was conclusory and overlooked evidence about her superior support system, given that she has relatives who live in the St. Louis area while Father has none in Columbia. But even if Mother is correct that these findings were somewhat inconsistent and incomplete, at best these factors would have supported giving Mother physical custody, and we would still not be convinced that granting Father sole physical

custody was an abuse of the trial court's broad discretion in light of its serious and substantiated concerns about Mother's continuing mental health needs.

The trial court appears to have found that the remaining statutory factors were neutral with respect to physical custody, favoring neither party. As to the wishes of the parents and their proposed parenting plans, *see* section 452.375.2(1), the court found that Mother had not submitted a proposed parenting plan and that she sought sole legal custody. Father concedes that these findings were erroneous, since Mother had in fact submitted a proposed parenting plan in which she sought joint legal custody. Although this finding was not supported by the evidence, the trial court was clearly aware that Mother and Father both sought sole physical custody. Because the parents had opposing wishes, this factor must not have weighed in favor of either party, and a review of Mother's parenting plan would not have altered the trial court's decision insofar as it relates to *physical* custody. Whether this error may have affected the court's award of *legal* custody is addressed in subsection II.B.2., *infra*.

The trial court also considered the children's needs for a meaningful relationship with both parents, as well as the parents' ability and willingness to perform parental functions, as required by section 452.375.2(2), and found that the "children are entitled to a frequent, continuing and meaningful relationship with both parents." Other findings indicate that the court agreed with the guardian *ad litem* that both Father and Mother are capable of caring for their children. Mother characterizes the court's findings as conclusory and argues that the trial court should have addressed how its decision would achieve such a relationship given that she has no decision-making authority and only limited

visitation. But the court's findings simply suggest that this factor favored neither party, and therefore was not particularly relevant to the trial court's ultimate custody determination. Thus, the court was not required to perform a detailed analysis with respect to this factor. *See Speer*, 155 S.W.3d at 62. Likewise, the court found "no credible evidence that the parties' children are not well-adjusted in either parent's home." *See* section 452.375.2(5) (children's adjustment to their home, school and community). Mother argues that the court never addressed the children's adjustment to their school and community. But the trial court need not be so specific, since this finding suggests that this factor did not favor either parent and was not, therefore, particularly relevant to its decision. *See Speer*, 155 S.W.3d at 62.[18]

The trial court has broad discretion in making child custody decisions, and we reverse its decision only if we are firmly convinced that the best interests of the children require otherwise. *See Abbott*, 140 S.W.3d at 293. The judgment suggests that most of the factors did not clearly favor either party and that joint physical custody was inappropriate given the distance between the parties' residences. In light of the trial court's high degree of concern that Mother might fail to take her medication and thereby pose risks to the safety of the children, and its questions about the propriety of Mother's actions surrounding the reported abuse of her daughter, we are not firmly convinced that it was inappropriate to give Father sole physical custody. Even if some of the factors would have supported giving physi-

cal custody to Mother, it is not our role to reweigh the evidence, especially when the trial court considered this a close case. *See St. Lawrence*, 109 S.W.3d at 226 (refusing to reweigh the evidence with respect to a child's best interests). The trial court's findings sufficiently complied with section 452.375.6. With the exception of an error relating to the first factor that was inconsequential with respect to physical custody, its findings were supported by substantial evidence. The trial court neither misapplied the law nor abused its broad discretion in making its physical custody determination.

Point denied.

## 2. Legal Custody

■ In her second point on appeal, Mother challenges the trial court's award of sole legal custody to Father. The court found that an award of joint legal custody would be inappropriate because of the distance between Mother and Father and their inability "to develop a written joint legal custody parenting plan." The court stated that Mother "will be too far away to be involved in the children's school and extra-curricular activities, and, as a practical matter, [Father] will have to make all of the day-to-day decisions concerning the children's care."

Mother argues that the trial court misapplied the standards governing custody decisions under section 452.375.4–.5 and that its decision to deny joint custody was an abuse of discretion and was not supported by substantial evidence. Specifically, Mother argues that the court failed to

**18.** If there is evidence as to the children's wishes regarding custody, the court must consider that as well. *See* section 452.375.2(8). The trial court found, and Mother concedes, that there was no credible evidence as to the minor children's wishes and that the guardian made no custody recommendation. But

Mother argues that the court overlooked some of the guardian's general opinions and concerns. Even if those opinions were entirely favorable to Mother—which the record belies—the court was not bound by the guardian's assessment. *See In re Marriage of Horinek*, 41 S.W.3d at 906.

realize that Mother sought joint legal custody and that she had submitted a parenting plan, that such error was not harmless in this close case, and that she would be able to participate in joint decisions despite the distance between her and Father.

 The legislature has expressed a public policy in favor of allowing children to have "frequent, continuing and meaningful contact with both parents after the parents have separated or dissolved their marriage." Section 452.375.4. This has been interpreted as a preference for joint legal custody. *See, e.g. Meyer v. Block,* 123 S.W.3d 316, 324 (Mo.App. W.D.2003) (stating that "joint legal custody is favored on public policy grounds"); *Brown,* 141 S.W.3d at 80 (noting that the "[p]reference for joint custody" is not meant "to induce parents to find common ground"). To the extent that there is a preference in favor of joint legal custody, it only applies when both parents are willing and able to share the rights and responsibilities related to raising their children. *McCauley v. Schenkel,* 977 S.W.2d 45, 51 (Mo.App. E.D. 1998). "There is no preference for joint custody unless, in the given circumstances, it is in the best interests of the child." *Id.* But joint legal custody cannot be denied solely because one parent opposes it. *Luther v. Vogel,* 863 S.W.2d 902, 904 (Mo. App. E.D.1993).

 It is well established that in deciding whether joint legal custody is in the children's best interests, two particularly important considerations for the trial court are whether the parents share "[a] commonality of beliefs concerning parental decisions" and whether they have the "ability to function as a parental unit in making those decisions." *In re Marriage of M.A.,* 149 S.W.3d 562, 569 (Mo.App. E.D.2004). "This commonality of beliefs is 'imperative to the best interest of the child in a joint custody arrangement.'" *Id.* (quoting Mehra v. Mehra, 819 S.W.2d 351, 353 (Mo. banc 1991)).

For the following reasons, we find that the trial court's award of sole legal custody to Father was erroneous. First, as indicated above, the court erroneously found that Mother failed to submit a parenting plan and that she sought sole legal custody, when in fact she had submitted a parenting plan and sought joint legal custody. Although there was some indication in the transcript that the family court commissioner knew that Mother had submitted a parenting plan, we cannot say that the trial court's error in finding to the contrary was harmless. If, as the judgment indicated, neither parent sought joint legal custody, that fact would support a conclusion that the parties could not make joint decisions with respect to their children. This may have been part of the trial court's rationale, and since Mother actually sought joint legal custody, we are not convinced that the trial court adequately considered that possibility.

 Additionally, the trial court made absolutely no findings that address whether Mother and Father share common beliefs or whether they are able to make joint decisions regarding their children. While written findings with respect to these two considerations may not be required, their absence supports our conclusion that the court failed to adequately consider joint legal custody. This is especially true given the trial court's misplaced focus on the relatively modest geographical distance between the parties in this case. An award of "joint legal custody" involves sharing the right, responsibility and authority to make decisions about important events in the children's lives, such as their health, education and welfare. *See* section 452.375.1(2); *Reisinger v. Reisinger,* 125 S.W.3d 879, 884 (Mo.App. E.D. 2004). Joint legal custody is not necessari-

ly inappropriate merely because one parent lives in a different city. Although Father argues that the court properly considered the distance between Columbia and the St. Louis area in refusing to award joint legal custody, given the numerous possible methods of communication in today's society, the parents' ability to confer with each other and exercise such rights is not totally dependent on their geographical proximity. Indeed, courts in this state have approved joint legal custody awards even though parents were separated by much greater distances than the distance between Mother and Father in this case. *See, e.g. Reisinger,* 125 S.W.3d at 884–85 (affirming award of joint legal custody even though mother had relocated with child to New Mexico); *DeFreece,* 69 S.W.3d at 111–16 (affirming award of joint legal custody even though child's primary residence was with mother in Iowa, although the appellant did not challenge the award of joint legal custody).

We reverse the trial court's award of sole legal custody to Father and remand for reconsideration of whether joint legal custody is appropriate in light of the factors relevant to that decision.

### 3. Summer Visitation

Mother's final claim of error challenges the amount of visitation the trial court awarded to Mother during the summer. The trial court awarded visitation to Mother on alternating weekends and holidays during the school year and for one-half of the summer, permitting the parties to deviate from its detailed schedule anytime they agreed to do so. Absent such agreement, on every other weekend, Mother's visitation period would begin at 6:00 p.m. on Friday and end at 6:00 p.m. on Sunday. The trial court set up a detailed, alternating holiday schedule, which took into account probable school holidays and three-day weekends, whereby Mother would get certain holidays in odd-numbered years and Father would get those same holidays in even-numbered years. Mother is entitled to visitation for exactly one-half of the summer under a detailed scheme of alternating two-week periods for each parent. Mother is responsible for transporting the children to her residence during her visitation periods, and Father is responsible for picking them up once her visitation period is over.

Mother does not challenge the weekend or holiday arrangements, but instead argues that she should get longer periods of visitation with her children during the summer months because she was given no regularly scheduled visitation from Monday through Thursday of each week. She contends that the current arrangement violates the public policy in section 452.375.4 of providing her with frequent, continuing and meaningful contact with her children. We disagree.

The fact that a visitation schedule does not provide a distant parent and child with visitation of the same frequency or duration as may have been feasible when they were located nearby does not constitute a basis for reversal. *Lavalle v. Lavalle,* 11 S.W.3d 640, 648 (Mo.App. E.D. 1999); *Maher v. Maher,* 951 S.W.2d 669, 676 (Mo.App. E.D.1997). Mother cites *McElroy v. McElroy,* in which this Court instructed the trial court to consider "the distances between the parties and the time spent traveling from one parent to the other, the opportunity for visitation posed by the children's extended school breaks and three-day weekends, as well as the children's weekend activities in developing the new schedule." 910 S.W.2d 798, 805 (Mo.App. E.D.1995). But in this case, the trial court's parenting plan took into account each of those items.

Point denied.

### III. CONCLUSION

The judgment is reversed for reconsideration of whether joint legal custody is appropriate, and in all other respects it is affirmed.

KATHIANNE KNAUP CRANE, J. and CLIFFORD H. AHRENS, J., concurring.