Gladys Marie HARPER, Respondent,

v.

Raymond Charles HARPER, Appellant.

No. 22359.

Missouri Court of Appeals,
Southern District,
Division One.

Nov. 4, 1999.

John A. Parks, Humansville, for appellant.

J.D. Baker, Baker & Dull, Osceola, for respondent.

JOHN E. PARRISH, Judge.

Raymond Charles Harper (husband) appeals a judgment that dissolved his marriage to Gladys Marie Harper (wife). This court affirms.

As this is an appeal of a case tried before the court without a jury, this court's review is undertaken pursuant to Rule 73.01(c). The judgment will be affirmed unless there is no substantial evidence to support the judgment, or the judgment is against the weight of the evidence, or the judgment erroneously declares or applies the law. *Francka v. Francka,* 951 S.W.2d 685, 688 (Mo.App.1997). The evidence is viewed in the light most favorable to the judgment. *Id.*

The parties married May 10, 1996. Both have children from prior marriages. They separated July 29, 1997. Wife filed her petition for dissolution of marriage the next day. Husband answered, denying the marriage was irretrievably broken. Wife then filed an amended petition alleging that husband had behaved in such a manner that she could not reasonably be expected to live with him.[1] Husband's amended answer denied wife's allegations concerning his behavior and denied that the marriage was irretrievably broken.

The trial court's judgment includes the following findings:

[Husband] has denied that the marriage is irretrievably broken. However, the Court finds that certain conduct and behavior of [husband] was considered by [wife] to be intolerable and caused her to have an attitude that she could not live with [husband] as husband and wife. This attitude of [wife] is very set and seems unshakeable [sic]. In *Gummels v. Gummels,* 561 S.W.2d 442 (Mo.App. St.L.D.1978)[,] the Court stated that under Section 452.320(2)(1)(b), it is the spouse's behavior, not misbehavior, that is considered and if the behavior of one spouse, combined with the attitude and behavior of the other, indicates a reasonable likelihood that the marriage cannot be preserved, then the marriage should be dissolved. The Court would not characterize the conduct or behavior of [husband] as misconduct or misbehavior, but does find that his conduct fostered a feeling of mistrust by [wife] that has created an unshakeable [sic] attitude on her part that she will not live with [husband] as his wife. The Court therefore finds that due to marital difficulties that have arisen between the parties, there is no reasonable likelihood that the marriage of [wife] and [husband] can be preserved and, therefore, the same is irretrievably broken.

Husband's first point on appeal asserts that the trial court erred in finding husband had behaved in such a way that wife could not reasonably be expected to live with him. Husband argues that the evidence was insufficient to support the trial court's finding that his behavior justified a determination that the marriage was irretrievably broken.

Wife testified that she no longer trusted husband because he had not done what he represented he would do before they married. Her lack of trust was based on discussions about where they would live. She told the trial court that the parties agreed to sell a house husband owned prior to the marriage and build a new home together; that they would each contribute funds to building the new home. She said they agreed that if the house husband owned did not sell within a year, they would remodel it. She explained, "And at that time he was going to put the property in mine and his name as husband and wife."

Wife told the trial court that husband did not sell his house within a year after they married. She said he told her he changed his mind; that he was not going to put the property in their names. He

---

1. § 452.320.2, RSMo 1994, specifies what is required of a trial court when one party has denied that the marriage is irretrievably broken. In order to find the marriage is irretrievably broken, the trial court must determine that one or more factors stated in § 452.320.2(1) exist. One of the factors is "[t]hat the respondent has behaved in such a way that the petitioner cannot reasonably be expected to live with the respondent." § 452.320.2(1)(b).

told her he was not going to do what he originally said, that he thought she should have only a one-third interest. Wife explained, "The man had told me he wanted to take care of me, he wanted me to have a home with him and we would share it as a home. And when I was told I was only worth a third of the home and we—It was like I had been weighed and found wanting or I'd been bought and wasn't worth it."

Wife testified that husband exhibited a superior attitude toward her. She told the trial court:

> He—He was to the point of managing—that I could not manage, even to run the dishwasher, the number of times in a day that I should. We had company and I—I run the dishwasher with just the glasses in it and I was told I was not to do this. I was like a child in my home. He—He was in full control of everything. His—His—His word was the law, and that was it.

Wife testified that husband would not yield on any of his attitudes that conflicted with hers. Wife was asked the following questions and gave the following answers:

Q. Did he have a—Did the same attitude extend to like religious matters?

A. Very much so. He has even been trying to teach me that divorce is wrong and he is so right.

Q. Did the—Did [husband] become cold and indifferent at times?

A. Cold and indifferent? If you mean—I tried for a month before I left to discuss things with him, and he'd pick up a book and go and sit down and read it with no comment to me whatsoever all evening.

■ The trial court observed the parties during each of their testimony. Great deference is given a trial court's ability to determine witness credibility. *Gummels v. Gummels,* 561 S.W.2d 442, 443 (Mo.App. 1978). There was sufficient evidence from which the trial court could find that wife could not reasonably be expected to live with husband because of husband's behavior toward her, including husband's attitude toward wife and unwillingness to discuss her concerns about the marriage. *See In re Marriage of Burns,* 903 S.W.2d 648, 651 (Mo.App.1995), (unreasonable to expect wife to live with husband whose behavior included unwillingness to communicate with her). Point I is denied.

■ Point II contends the trial court erred in failing to grant a judgment of legal separation rather than a judgment of dissolution of marriage because husband denied the irretrievable breakdown of the marriage and requested that a judgment of legal separation be entered.

The trial court heard the evidence in this case March 31, 1998. Judgment was entered April 28, 1998. The statute then in effect that directed when decrees of dissolution or decrees of legal separation were required was § 452.305, RSMo Cum. Supp.1997. Subsection 2 of that statute provided, "If a party requests a decree of legal separation rather than a decree of dissolution of marriage, the court shall grant the decree in that form." [2] Husband requested the trial court, if it found the marriage was irretrievably broken, to enter an order of legal separation.

The statute on which husband relies was changed during the time this case has been on appeal. Section 452.305, RSMo Cum. Supp.1998, became effective August 28, 1998, ninety days after the adjournment of the general assembly. *See* Mo. Const. art. III, § 29.[3] Section 452.305.2, RSMo Cum. Supp.1998, states:

---

**2.** § 452.360.3, RSMo 1994, in effect at the time of the trial and when judgment was entered, provides, "No earlier than ninety days after entry of a decree of legal separation, on motion of either party, the court may convert the decree of legal separation to a decree of dissolution of marriage."

**3.** The regular session of the general assembly ends May 30 of each year. Mo. Const. art. III, § 20(a).

The court shall enter a judgment of legal separation if:

(1) The court finds that one of the parties has been a resident of this state, or is a member of the armed services who has been stationed in this state, for ninety days immediately preceding the commencement of the proceeding and that thirty days have elapsed since the filing of the petition; and

(2) The court finds that there remains a reasonable likelihood that the marriage can be preserved and that therefore the marriage is not irretrievably broken; and

(3) To the extent it has jurisdiction, the court has considered and made provision for the custody and the support of each child, the maintenance of either spouse and the disposition of property.

The current version of the statute, § 452.305.2(2), RSMo Cum.Supp.1998, would not permit the trial court to grant a legal separation since the trial court did not find that there remained a reasonable likelihood that the marriage could be preserved; that the marriage was not irretrievably broken.

■ "An appellate court must decide a case on the basis of the law in effect at the time of the appellate decision." *Sturgess v. Guerrant,* 583 S.W.2d 258, 262 (Mo.App. 1979). *State ex rel. Holland Industries, Inc. v. Division of Transp.,* 762 S.W.2d 48, 50–51 (Mo.App.1988), explains:

The rule that an appellate court must decide a case upon the basis of the law in effect at the time of decision is rooted in *United States v. Schooner Peggy,* 1 Cranch 103, 2 L.Ed. 49 (1801). Since that time the United States Supreme Court has consistently adhered to that doctrine. In *Thorpe v. Housing Authority of the City of Durham,* 393 U.S. 268, 281, 89 S.Ct. 518, 526, 21 L.Ed.2d 474, 484 (1969), the Court declared the general rule to be that an appellate court must apply the law in effect at the time it renders its decision. In *Bradley [v.*

*School Board of City of Richmond,* 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974) ], the Court held that *Thorpe* "stands for the proposition that even where the intervening law does not explicitly recite that it is to be applied to pending cases, it is to be given recognition and effect." 416 U.S. at 715, 94 S.Ct. at 2018, 40 L.Ed.2d at 490.

An exception to the application of the rule was stated in *Bradley* and recognized in [*State ex rel.*] *Pfitzinger* [*v. Wasson,* 676 S.W.2d 533 (Mo.App. 1984) ]. That is that the law in effect ·at the time of the decision will not be applied if to do so would result in manifest injustice or there is statutory direction or legislative history to the contrary.

This court holds that no manifest injustice would result in applying current law. There is no statutory direction or legislative history that precludes applying the law now in effect. Point II is denied. The judgment is affirmed.

CROW, P.J., concurs in separate opinion filed.

SHRUM, J., concurs.

CROW, Presiding Judge, concurring.

I concur, and write only in regard to Point II.

I agree that in this case, this court should apply the current version of § 452.305.2, as applying it does not cause manifest injustice.

However, one can easily envision instances where applying the law in force at the time of an appellate decision instead of the law in force when a claim or dispute arose would result in manifest injustice. Indeed, Mo. Const., Art. I, § 13 (1945), prohibits enactment of an ex post facto law, i.e., one that takes away or impairs vested rights acquired under existing law. *Liberty Mutual Ins. Co. v. Garffie,* 939 S.W.2d 484, 486[2] (Mo.App. E.D.1997).

My conclusion that the current version of § 452.305.2 should apply here is limited to the particular facts before this court. Applying the current version does not take away or impair any vested right acquired under earlier law, but affects only the remedy by eliminating the delay in granting a dissolution.

As that is the only consequence, I concur.