

# In the Missouri Court of Appeals
# Eastern District

### DIVISION TWO

| | | |
|---|---|---|
| DEBORAH S. THORNBURG, | ) | No. ED112178 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of Marion County |
| vs. | ) | Cause No. 22MM-CV00201 |
| | ) | |
| JAMES T. THORNBURG, | ) | Honorable David C. Mobley |
| | ) | |
| Appellant. | ) | FILED: January 28, 2025 |

### Opinion

James T. Thornburg (Father) appeals from the circuit court's judgment dissolving his marriage to Deborah S. Thornburg (Mother) and granting Mother sole legal custody of the couple's two minor children. Father raises three points on appeal. Point One alleges the circuit court erred in granting Mother's petition for dissolution because she did not satisfy the statutory factors necessary to find that the marriage was irretrievably broken under § 452.320, RSMo (2016).[1] Point Two alleges there was no substantial evidence in the record to support granting sole legal custody to Mother. Point Three alleges the circuit court erred by ordering a parenting plan that did not comply with the statutory requirements of § 452.310, RSMo (2016). Because the record supports granting Mother's petition for dissolution on the grounds that she could no longer be expected to live with Father, we find the circuit court did not err in dissolving the marriage.

---

[1] All statutory references are to RSMo (Cum. Supp. 2023), unless otherwise specified.

Point One is denied. However, we find that under this record, the circuit court's judgment awarding sole legal custody to Mother was an abuse of discretion as it is not supported by substantial evidence. Hence, we grant Point Two. Lastly, at oral argument, Father conceded Point Three is not preserved and affirmatively abandoned it.[2] Point Three is dismissed. Accordingly, we affirm the court's judgment dissolving the marriage between Mother and Father, and we reverse the circuit court's award of sole legal custody to Mother and remand the case for the circuit court to enter a judgment of joint legal custody.

Background

Mother and Father married on August 21, 2010. Mother's family owns an electric company, where she and Father were both employed. Mother and Father had two children, who were eleven and nine years old at the time of trial. While Mother was the primary parent for handling the children's daily routine, the couple shared duties of cleaning the home and taking the children to their various sports and extracurricular activities, and Father helped the children with homework. It is undisputed the marriage was good until 2016, when numerous disputes arose regarding work, the children, and most important, the health of the marriage. Father blamed Mother for his unhappiness, because she put her work above him. Mother was also miserable in the marriage because Father was distant and disinterested in the family to the extent that Father was a "third child," leaving her solely responsible for many of the day-to-day responsibilities.

Mother and Father also argued about the children but were able to resolve their disagreements. One argument was whether their son should be held back one year in school which Father considered best for the child. Mother initially disagreed, but after a conversation with the school's principal confirmed the benefits of holding the child back she agreed with Father. In

---

[2] *See Ramirez v. Missouri Prosecuting Attorneys'*, 694 S.W.3d 432, 437 n.5 (Mo. banc 2024) (declining to review a point relied on that was conceded at oral argument).

another dispute regarding when daughter could take communion, the parents did not have an opportunity to reach a consensus because the child independently took communion during church services without permission from either parent. Father disagreed with Mother "forcing" daughter to choose between travel softball and competitive barrel racing, but the dispute was resolved with the daughter choosing to continue barrel racing. Finally, a major argument revolved around who was responsible for the accidental death of the family dog.

In October of 2022, Father was laid off from Mother's family's company, which further challenged the marriage and culminated in a particularly contentious argument. Following a church service, Mother and Father had another disagreement that lasted three days. On October 24, 2022, Mother and Father told the children they were getting a divorce in a conversation that was witnessed by both maternal and paternal grandparents. Mother testified that after the grandparents left, Father attempted to remove her from the house, and she barricaded herself and daughter in the bedroom to prevent this. Mother called Father's mother, who returned and escorted him out of the home.

From that day until January of 2023, Mother and Father took turns living at home with the children while Father sought his own permanent residence. Mother and Father continued to argue, including over their plans to divorce, as Father was adamant that he did not want a divorce. He warned that he would make the divorce "nasty" and once threw a key at Mother in front of a church minister who was counseling them. Mother asked Father to stop making comments in front of the children about how he still loved her and did not want to divorce her. Custody exchanges were difficult, as Mother and Father publicly argued over where the exchanges would occur.

When the case proceeded to a bench trial on September 8, 2023, Mother and Father had been living apart for nearly one year and were sharing custody of the children on a schedule. Mother had children from 6 p.m. Sunday until Wednesday when she took the children to school. Father

3

then had the children Wednesday after school until Friday night with alternating Saturdays. In Mother's amended petition, she initially sought joint legal and joint physical custody. Mother testified that Father had shown a willingness to co-parent the children over the course of the last year. Mother agreed that Father loved the children and that he was a "much better father now than he was before." Mother nevertheless testified that Father had not stopped arguing with her at exchanges about how he wanted to work on the marriage and was against divorce. Mother stated she was asking for sole legal custody of the children because Father had not been involved with the day-to-day management of the children's lives during their eleven-year marriage.

Regarding the breakdown of the marriage, Mother did not claim Father had abandoned her or committed adultery. Mother stated she tried as long as she could to hold onto the marriage, but that the marriage was irretrievably broken and she could not reasonably be expected to stay married to someone who was like her "third child." Father disagreed with Mother's characterization of the marriage as irretrievably broken—calling the rough period of their marriage a "trial" they could overcome— but acknowledged there was some validity to her feeling like he was her "third child" and admitted that he sometimes didn't speak with kindness toward Mother because he does not have a "filter."

Following trial, the circuit court entered judgment dissolving the marriage and awarding Mother and Father joint physical custody and Mother sole legal custody of both children. The circuit court adopted Mother's proposed parenting plan, which provided for the following physical custodial arrangement: the children would reside with Mother from 6 p.m. Sunday until 9 a.m. Wednesday, and the children would reside with Father from 9 a.m. Wednesday until 9 a.m. Friday with alternating weekends. Major holidays were also split between the parties, and Father was ordered to pay $619 per month in child support. Father filed a post-judgment motion to correct the judgment in which he requested the circuit court correct the date of the marriage, which the circuit

4

court granted. Father then appealed from the circuit court's final judgment.

This Court *sua sponte* found Father's original brief failed to comply with substantive portions of Rule 84.04[3] and ordered him to file an amended brief. After Father filed his amended brief wherein he addressed some of the deficiencies, Mother moved for this Court to strike Father's amended brief and dismiss the appeal on the basis that the brief still failed to comply with Rule 84.04. We took this motion was taken with the case.

Discussion

**I.      Mother's Motion to Strike Father's Brief and Dismiss Appeal for Rule 84.04 Briefing Deficiencies**

As a threshold issue, we consider Mother's motion to strike Father's amended brief and dismiss the appeal for failure to comply with Rule 84.04. In her motion, Mother argues Father did not comply with the Court's order to bring his briefing into full compliance with Rule 84.04.

Rule 84.04 sets forth the mandatory minimum requirements for appellate briefing. *Murphree v. Lakeshore Ests., LLC*, 636 S.W.3d 622, 623 (Mo. App. E.D. 2021) (internal citation omitted). "Failure to comply with the rules of appellate procedure is a proper ground for dismissing an appeal." *Id.* at 624 (internal quotation omitted). Although Rule 84.04 deficiencies preserve nothing for review and justify dismissing an appeal, this Court has within its discretion to reach the merits *ex gratia* when the minor briefing deficiencies do not impair meaningful review. *Id.* at 624 (internal citation omitted); *see also E.K.H.-G v. R.C.*, 613 S.W.3d 449, 454 (Mo. App. E.D. 2020). Indeed, we prefer to reach the merits where possible. *Id.* (internal citation omitted). We are particularly inclined to exercise this discretion when the well-being of children is at issue. *E.K.H.-G*, 613 S.W.3d at 454 (internal citation omitted). As this Court has explained: "In cases relating to children's welfare, we may relax the rigid requirements [of Rule 84.04] if we can

---

[3] All Rule references are to Mo. R. Civ. P. (2024), unless otherwise noted.

sufficiently ascertain the issues being raised." *Id.* (internal quotation omitted) (alteration in original); *see also Prevost v. Silmon*, 645 S.W.3d 503, 507 n.1 (Mo. App. W.D. 2022) (exercising discretion to review a parent's appeal from a dissolution modification judgment awarding sole legal custody despite Rule 84.04 briefing deficiencies).

Here, because Father's points on appeal and accompanying arguments are not so deficient as to impair meaningful review, and because the issues center on the best interests of the children, we exercise our discretion to review the appeal on its merits. *See E.K.H.-G*, 613 S.W.3d at 454; *see also Prevost*, 645 S.W.3d at 507 n.1. We therefore deny Mother's motion and proceed in our review.

## II.     Standard of Review

We review dissolution cases like other bench-tried cases pursuant to Rule 73.01(c). *Barbieri v. Barbieri*, 633 S.W.3d 419, 425 (Mo. App. E.D. 2021) (citing *Murphy v. Carron*, 536 S.W.2d 30, 31 (Mo. banc 1976)). As such, we will affirm the circuit court's judgment unless there is no substantial evidence to support the judgment, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.* (citing *Murphy*, 536 S.W.2d at 31).

A circuit court's judgment is unsupported by substantial evidence when there is no evidence in the record "tending to prove a fact that is necessary to sustain the judgment as a matter of law." *Id.* (citing *Ivie v. Smith*, 439 S.W.3d 189, 206 (Mo. banc 2014)). We view the evidence in the light most favorable to the judgment and defer to the circuit court's superior ability to determine witness credibility. *Harper v. Harper*, 4 S.W.3d 626, 628 (Mo. App. S.D. 1999) (citing *Gummels v. Gummels*, 651 S.W.2d 442, 443 (Mo. App. S.L.D.1978)). However, we review the circuit court's legal conclusions and application of law to the facts *de novo*. *McLeod v. McLeod*, 681 S.W.3d 215, 229 (Mo. App. W.D. 2023) (citing *Singleton v. Singleton*, 659 S.W.3d 336, 341 (Mo. banc 2023)). An alleged misapplication of the law will constitute reversible error if the misapplication of law

6

"materially affects the merits of the action [so that we have] a firm belief that the . . . judgment is wrong." *Id.* (internal quotation omitted).

Regarding dissolution, we give great deference to the circuit court's decision that one spouse cannot reasonably be expected to live with the other. *In re Marriage of Burns*, 903 S.W.2d 648, 651 (Mo. App. E.D. 1995) (internal citation omitted). Regarding custody, "[t]he trial court has broad discretion in custody matters, and we will affirm its award of custody unless we are firmly convinced the children's welfare requires otherwise." *Moore v. Moore*, 645 S.W.3d 705, 710 (Mo. App. W.D. 2022) (internal citation omitted); *see also Reichard v. Reichard*, 637 S.W.3d 559, 570–71 (Mo. App. W.D. 2021) (noting that because a custody decision requires determining a child's best interests, we will reverse only if the trial court abused its discretion); *Dunkle v. Dunkle*, 158 S.W.3d 823, 838 (Mo. App. E.D. 2005) (internal citation omitted) ("The trial court has broad discretion in making child custody decisions, and we reverse its decision only if we are firmly convinced that the best interests of the children require otherwise.").

### III. Point One—The Circuit Court did not Err in Granting Mother's Petition for Dissolution

Father first alleges the circuit court erred in granting Mother's petition for dissolution of their marriage because Mother did not prove the marriage is "irretrievably broken." Given our deference to the circuit court's superior position from which to determine the credibility and sincerity of the parties' testimonies and evidence, we find the record supports the circuit court's judgment that Mother and Father had a prolonged history of discord and could not reasonably be expected to live with each other. We therefore find the court did not err in dissolving the marriage.

In an instance where one party denies that a marriage is irretrievably broken, the circuit court is guided by § 452.320.2, RSMo (2016) as follows:

7

2. If one of the parties has denied under oath or affirmation that the marriage is irretrievably broken, the court shall consider all relevant factors, including the circumstances that gave rise to the filing of the petition and the prospect of reconciliation, and after hearing the evidence shall

(1) Make a finding whether or not the marriage is irretrievably broken, and in order for the court to find that the marriage is irretrievably broken, the petitioner shall satisfy the court of one or more of the following facts:

(a) That the respondent has committed adultery and the petitioner finds it intolerable to live with the respondent;

(b) That the respondent has behaved in such a way that the petitioner cannot reasonably be expected to live with the respondent;

(c) That the respondent has abandoned the petitioner for a continuous period of at least six months preceding the presentation of the petition;

(d) That the parties to the marriage have lived separate and apart by mutual consent for a continuous period of twelve months immediately preceding the filing of the petition;

(e) That the parties to the marriage have lived separate and apart for a continuous period of at least twenty-four months preceding the filing of the petition[.]

Mother maintains the circuit court properly dissolved the marriage under subsection (1)(b) because Mother cannot, in light of Father's behavior, be "reasonably expected to live with" him. *See* § 452.320.2(1)(b), RSMo (2016). Missouri courts have previously affirmed a judgment of dissolution on the basis of one party's "somewhat brief synopsis" of a broken marriage, finding the testimony showed "financial and communication incompatibility." *In re Marriage of McCurdy*, 233 S.W.3d 260, 262 (Mo. App. S.D. 2007). *McCurdy* noted that "[t]here is no reason for [the appellate court] to delve into the parties' incompatibility" where the record contained the minimally sufficient evidence to satisfy the "statutory predicate." *Id.* This precedent is consistent with other caselaw holding that an inability to communicate or inability to iron out differences is sufficient to satisfy § 452.320.2(1)(b), RSMo (2016). *Gummels*, 561 S.W.2d at 43–44 (finding a long history of the spouses' inability to communicate was sufficient to show they were incapable of living together and there was no likelihood the marriage could be preserved).

Here, the circuit court was presented with far more than a "brief synopsis" of the deterioration of Mother and Father's marriage. *See McCurdy*, 233 S.W.3d at 262. Mother testified

that she and Father argued for several years over a wide range of topics, and she claimed that the same arguments were repeated with nothing resolved when they attempted counseling. *See McCurdy*, 233 S.W.3d at 262; *Gummels*, 561 S.W.2d at 443–44. Father did not rebut this testimony and conceded Mother had a valid basis to consider him a "third child" given his participation—or lack thereof—in various aspects of their home life. Both Mother and Father admitted to being unhappy in the marriage but came to different conclusions as to whether the marriage was irretrievably broken.

The circuit court was in the best position to judge the credibility, "sincerity," "character," and "other trial intangibles" before it at the time. *See Gummels*, 561 S.W.2d at 443. While the decision to enter into or dissolve a marriage is a serious and deeply personal one, we find the court did not err in granting Mother's petition for dissolution because the circuit court had substantial evidence before it to support her claim that she cannot realistically live with Father. *See Harper*, 4 S.W.3d at 627; *see also McCurdy*, 233 S.W.3d at 262. Point One is denied.

## IV. Point Two—The Circuit Court Abused Its Discretion in Awarding Sole Legal Custody to Mother Because The Judgment Was Not Supported By Substantial Evidence

Father next challenges the circuit court's award of sole legal custody of both minor children to Mother. Although we found in our discussion of Point One that the relationship between Mother and Father has so deteriorated as to justify a grant of dissolution, there is no substantial evidence in the record demonstrating that Mother and Father are unable to act as a parental unit with commonality of belief in parenting decisions such that an award of sole legal custody to Mother is in the best interests of the children. *See Moore*, 645 S.W.3d at 711; *Dunkle v. Dunkle*, 158 S.W.3d 823, 840 (Mo. App. E.D. 2005). In fact, the record establishes that both parents are able to co-parent effectively. Therefore, we find the circuit court erred in awarding Mother sole legal custody and we reverse the circuit court's legal custody award and remand the

9

cause for the circuit court to enter an award of joint legal custody.

The Missouri legislature has created a public policy preference in favor of joint physical and joint legal custody if such a custody arrangement serves the best interests of a child. *White v. White*, 616 S.W.3d 373, 380 (Mo. App. E.D. 2020) (internal quotation omitted). The purpose of this policy is to "encourage parents to participate in decisions affecting the health, education, and welfare of their children and to resolve disputes involving their children amicably through alternative dispute resolution." § 452.375.4. In making a custodial determination, the court "shall determine the custody arrangement which will best assure ***both parents*** participate in such decisions and have frequent, continuing and meaningful contact with their children so long as it is in the best interests of the child." §§ 452.375.2–4 (emphasis added); *see also* § 452.375.5(1). Moreover, § 452.375.5 requires the circuit court to consider an award of joint physical and joint legal custody when determining the appropriate custody arrangement in the child's best interests before entering a judgment awarding sole legal or sole physical custody to one parent. *Reno v. Gonzales*, 489 S.W.3d 900, 902 (Mo. App. W.D. 2016).

"It is well established that in deciding whether joint legal custody is in the children's best interests, two particularly important considerations for the trial court" are (1) a "commonality of beliefs" concerning parenting decisions, and (2) the "ability to function as a parental unit" in executing those decisions. *Dunkle*, 158 S.W.3d at 839. Furthermore, joint legal custody cannot be denied simply because one parent is opposed to such a custody arrangement. *Luther v. Vogel*, 863 S.W.2d 902, 904 (Mo. App. E.D. 1993). A judgment of sole legal custody must be based on a finding that parties lack a commonality of beliefs concerning parental decisions and are unable and unwilling to function as a unit in their decision making. *Prevost,* 645 S.W.3d at 513 (citing *Reno*, 489 S.W.3d at 905.)

In *Moore*, the Western District affirmed a judgment awarding sole legal custody to the

10

father as appropriate in light of the parents' inability to communicate and cooperate. 645 S.W.3d at 711. The judgment was supported by evidence of the mother's extreme mistrust and animosity towards the father, which included calling his employer in an effort to have him fired, hiring a private investigator to follow and surveil him, and contacting law enforcement with false claims in an effort to have him arrested. *Id.* Moreover, the evidence established a total lack of commonality of beliefs, including mother's preference to have the children homeschooled and left unvaccinated in opposition to father's preference that the children attend public school and receive all required vaccinations. *Id.* at 707.

The facts at bar are distinguishable from those in *Moore*. Here, while the record indicates that conflicts between Mother and Father exist, there is no indication that the ill feelings between them are so great that they cannot function as a joint unit when co-parenting their children. *See id.*; *see also Reno*, 489 S.W.3d at 905. Mother's parenting plan always contemplated joint legal and joint physical custody throughout the pendency of the case, and it was not until the time of trial that Mother decided to pursue sole legal custody. Indeed, Mother acknowledged at trial that Father loved the children and had been a much better parent since their separation, during which he took on co-parenting responsibilities when the children were in his custody. These facts create a strong inference that the parties are able to make joint decisions about their children, and had in fact been doing so during the eleven months prior to trial that they were living a part and co-parenting the children. Although the record evidenced minor disputes pertaining to son's education and the timing of daughter's participation in religious rites, there was not, as in *Moore*, a chasm of difference between Mother and Father's beliefs regarding these fundamental parenting topics nor others such as medical care, participation in extracurricular activities, or contact with extended family. *See Moore*, 645 S.W.3d at 707. The record demonstrates that the disagreements that did occur were able to be resolved between the parties. The parents' ability to communicate and

11

cooperate is crucial in considering whether joint legal custody is proper." *Mehler v. Martin*, 440 S.W.3d 529, 536 (Mo. App. E.D. 2014). The record supports a finding that the parents were able to and would continue to be able to communicate on matters pertaining to their children.

Our thorough review of the record reveals that the only evidence supporting the circuit court's award of sole legal custody to Mother was evidence that Mother and Father's relationship was acrimonious and that during the marriage Father acted as a third child to care for rather than a spouse. However, acrimony between parents alone is insufficient to grant sole custody when the record contains evidence that, despite the acrimony, the parents have the ability and willingness to deal with each other in raising their children. *Luther*, 863 S.W.2d at 904 (internal citation omitted) (noting the best interests of the parents are secondary to the best interests of the child). In *Luther*, although the parents displayed a high level of hostility towards one another, there was substantial evidence that the parties loved their child, the mother admitted the father was a good parent, and the mother expressed her willingness to cooperate in decision-making for the child if the animosity between the parties could be put to rest. *Id.* Consequently, this Court affirmed the circuit court's judgment awarding the parties joint legal custody. *Id.* Here, we have a similar scenario. While Mother and Father have a long history of incompatibility that came to a head regarding whether to divorce, their disagreements regarding their children as evidenced in the record have been minimal and have always come to a resolution. The only continued hostility between Mother and Father are Father's repeated pleas to save the marriage rather than end it. While these repeated, unwanted requests are cause for frustration and evidence of why Mother cannot be expected to live with Father, they are not evidence that they cannot co-parent their children.

In *Dunkle,* we reversed an award of sole legal custody to the father where his main contention was the physical distance between his and mother's residences after his relocation. 158 S.W.3d at 838. There, we found that joint legal custody is not rendered inappropriate merely due

12

to geographical distance between parents, even when the record otherwise supports awarding one parent sole physical custody. *See id.* at 839–40.[4]

Although the circuit court found credible Mother's contention that she is the sole caretaker of the children and that as such is entitled to sole legal custody, this rationale must be considered in conjunction with Father's willingness to be a parent, including, but not limited to, exercising his right to visitation with the children. *See Rallo v. Rallo*, 477 S.W.3d 29, 37–38 (Mo. App. E.D. 2015) (finding an award of sole physical custody to mother was supported by substantial evidence that included mother's role as primary caretaker, father's repeated failure to engage in regular visitation, and father's inability to control son's tantrums, but also affirming the trial court's judgment awarding the parties joint legal custody). Unlike, the record in *Rallo,* the record before us does not show that Father failed to exercise visitation with the children during the separation— to the contrary, Father had physical custody of the children several days a week with alternating weekends for approximately eleven months—or that Father was unable to manage his children's behavior. *See id.* In fact, Mother conceded at trial that Father had been a better father to their children in the past year than he had been previously.

The record in this case is anemic on evidence that points to a co-parenting relationship so deteriorated that Mother and Father cannot make joint decisions for each child in spite of the marital disharmony. *See Reno*, 489 S.W.3d at 905; *Luther*, 863 S.W.2d at 904; *Dunkle*, 158 S.W.3d at 840. Because there is not substantial evidence to support the circuit court's determination that sole legal custody to Mother is in the best interests of the children, we are firmly convinced the circuit court abused its discretion. *See Moore*, 645 S.W.3d at 710 (internal citation omitted); *Dunkle*, 158 S.W.3d at 838 (internal citation omitted); *see also Barbieri*, 633 S.W.3d at

---

[4] Regarding sole physical custody, which was affirmed, the circuit court noted its concerns about the mother's handling of the reported abuse of her daughter and whether the mother might fail to take her medication and thereby pose a risk to the children's safety. *Dunkle*, 158 S.W.3d at 838.

425 (citing *Ivie*, 439 S.W.3d at 206). Accordingly, we grant Point Two and reverse the circuit court's award of sole legal custody to Mother.

Conclusion

The judgment of the circuit court is affirmed in part and reversed in part. We affirm the grant of dissolution. We reverse the custodial award of sole legal custody to Mother and remand this matter for the circuit court to enter a judgment of joint legal custody.

_Rebeca Navarro-McKelvey_
Rebeca Navarro-McKelvey, J.

Lisa P. Page, P.J., and
Patricia Breckenridge, Sp. J., dissents in a separate opinion.

14



# In the Missouri Court of Appeals
# Eastern District

## DIVISION TWO

| | | |
|---|---|---|
| DEBORAH S. THORNBURG, | ) | No. ED112178 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of Marion County |
| vs. | ) | Cause No. 22MM-CV00201 |
| | ) | |
| JAMES T. THORNBURG, | ) | Honorable David C. Mobley |
| | ) | |
| Appellant. | ) | FILED: January 28, 2025 |

### Dissent

I concur with the portion of the majority opinion overruling the motion of Deborah S. Thornburg ("Mother") to strike the brief filed by James T. Thornburg ("Father") and denying the claims in Father's Points Relied On One and Three. I respectfully dissent, however, from its holding on Father's Point Relied On Two that reverses the circuit court's award of sole legal custody of the parties' children to "Mother" and remands to the circuit court for entry of an award of joint legal custody. The majority opinion holds the circuit court abused its discretion because "there is not substantial evidence in the record to support the circuit court's determination that sole legal custody to Mother is in the best interests of the children." The majority opinion specifically holds there is not substantial evidence that Mother and Father lack the ability to act as a parental unit with commonality of belief in parenting decisions and, instead, "the record establishes that both parents are able to co-parent effectively." I disagree.

The decision on appeal in this case should adhere to our deferential standard of review

applicable to all court-tried cases. *See A.J.C. by & through Next Friend J.D.C. v. K.R.H.*, 602 S.W.3d 857, 866 (Mo. App. S.D. 2020) (internal quotation omitted). When considering whether substantial evidence supports the circuit court's judgment, "[w]e view the evidence and the reasonable inferences drawn from the evidence in the light most favorable to the judgment, disregard all evidence and inferences contrary to the judgment, and defer to the trial court's superior position to make credibility determinations." *Id.* at 866–67 (quoting *In re Marriage of Harris*, 446 S.W.3d 320, 332 (Mo. App. S.D. 2014)). Given that superior position, "any citation to or reliance upon evidence and inferences contrary to the judgment is irrelevant and immaterial to an appellant's point and argument challenging a factual proposition necessary to sustain the judgment as being not supported by substantial evidence." *Id.* (quoting *Harris*, 446 S.W.3d at 332). "Such contrary facts and inferences provide no assistance to this Court in determining whether the evidence and inferences favorable to the challenged proposition have probative force upon it, and are, therefore, evidence from which the trier of fact can reasonably decide that the proposition is true." *Id.* (quoting *Harris*, 446 S.W.3d at 332).

In light of this standard of review, I concur with the majority opinion's statements of law but do not concur with its application of that law to the facts of this case. The majority opinion properly states the award of custody, in this case, is governed by Section 452.375,[1] including the legislative public policy that encourages parents to participate in decisions affecting the children's health, education, and welfare and to resolve disputes over their children amicably through alternative dispute resolution. Section 452.375.4. It acknowledges that the statute also requires a court to determine the custody arrangement that best assures both parents "participate in such decisions . . . so long as it is in the best interests of the child[ren]." *Id.* The majority further cites the statutory

---

[1] All statutory references are to RSMo (Cum. Supp. 2023).

requirement that, prior to entering an award of physical and legal custody, the circuit court shall consider a list of legally permissible custody arrangements. Section 452.375.5. The first permissible option listed is joint physical and joint legal custody, and the second is "joint physical custody with one party granted sole legal custody." *Id.*

In reaching its decision to reverse, the majority opinion also correctly states the law governing appellate review.[2] In analyzing whether there is sufficient evidence to support the circuit court's award of sole legal custody to Mother, however, the majority opinion does not properly adhere to the tenets of appellate review that it states. Particularly, it does not fully appreciate that "[t]he trial court . . . is in a far better position to evaluate the credibility of witnesses than an appellate court and the resolution of conflicting evidence concerning the relative fitness of parents for custody is left to the trial court with deference to be accorded its conclusions." *Id.* (internal quotation omitted). Nor that a reviewing court presumes "the trial court awarded custody consistent with the child's best interests after reviewing all of the evidence[.]" *S.F.G. by Next Friend A.E.R. v. A.M.G.*, 591 S.W.3d 907, 913 (Mo. App. E.D. 2019) (citing *Dunkle v. Dunkle*, 158 S.W.3d 823, 833 (Mo. App. E.D. 2005)). Contrary to these legal tenets, the majority opinion does not consider all the evidence favorable to the circuit court's award of sole legal custody to Mother and *only* the evidence favorable to that award. *See A.J.C.*, 602 S.W.3d at 866–67 (quoting *Harris*, 446 S.W.3d at 332).

When considering the evidence in the light most favorable to the circuit court's award and deferring to that court's weight and credibility determinations, I would find there is substantial evidence Father is unable and unwilling to participate in joint decision-making and to function as a

---

[2] I agree with the majority opinion's implicit holding that the judgment's lack of detailed findings as to the Section 452.375.6 factors—not challenged by Father in this Point Relied On, nor preserved in his Mo. R. Civ. P. Rule 78.07 motion—does not impair meaningful review of the custody award in light of the judgment's overall factual and legal findings. *See Prevost v. Silmon*, 645 S.W.3d 503, 515 (Mo. App. W.D. 2022) (internal citation omitted) (rejecting a parent's claim that the judgment failed to make sufficient statutory best-interests findings to allow for meaningful appellate review of the custody decision).

parental unit. *See A.J.C.*, 602 S.W.3d at 866–67 (quoting *Harris*, 446 S.W.3d at 332). Accordingly, there is substantial evidence to support the circuit court's rejection of the legislative preference for an award of joint legal custody and to award sole legal custody to Mother. I would affirm the circuit court's judgment in its entirety.

In the light most favorable to awarding Mother sole legal custody, the evidence was that, during the children's lives, Mother solely made the vast majority of decisions regarding the children's health, education, and welfare. In raising the children, Mother received little support from Father and, at times, felt she had a third child. Beginning in 2016, Father was distant and disinterested in the family. For those last seven years of the marriage, Mother and Father "argued about issues regarding the raising of their children." Contrary to the majority opinion's statement that the parties were able to resolve disagreements regarding the children through joint decision-making, the evidence was that such disagreements were not resolved by the parties engaging in joint decision-making and does not show the parties have the ability to communicate and cooperate.

Regarding specific arguments between the parties, such as those over the son's education and the daughter's participation in religious rites, the evidence was Mother talked to the son's principal and was convinced by that interaction to hold the son back in school, and the daughter took communion despite lacking parental permission when she was eight because her friends were taking communion and she liked Hawaiian bread. The parties also argued over Mother's handling of the daughter's desire to participate in softball with a traveling team. Father objected to Mother telling their daughter, when she was ten years old, that playing softball with a traveling team and taking part in competitive barrel racing both required substantial expenditures and that her choice to participate in softball with a traveling team would require sale of the $20,000 horse she used for barrel racing.[3]

---

[3] Mother also advised the daughter that there would be time conflicts with the two activities and that she needed to consider she would have an obligation to the softball team to be present for games.

4

The dispute was resolved by their daughter choosing to participate only in barrel racing. There was no evidence of parental interaction, other than during arguments, to resolve these disagreements.

Importantly, the majority opinion relies on the fact that there were primarily four subjects over which the parties argued regarding the children—the three above and the fact that, two years previously, Mother mistakenly accused the children of causing the death of the family dog in a hot vehicle when Mother was the one responsible for closing the door while the dog was inside.[4] It characterizes the small number of subjects over which the parties argued regarding the children as being only a few arguments. That conclusion is contrary to the testimony of both Mother and Father that Father repeatedly became angry and initiated arguments about the same four matters.[5] During these arguments, Father would yell at Mother and say mean things. The evidence was that Father persistently started arguments about past events, including the dog incident from two years prior, rather than focusing on solving present disagreements about the children's health, education, and welfare. At trial, Father attempted to justify what he characterized as his "asking about the same thing multiple times" as his inability to "let stuff go" because he needed to better understand Mother's way of thinking. These repeated impasses reflect the parties' lack of a commonality of beliefs concerning parental decisions as well as an inability to effectively function together.

The circuit court was free to consider all evidence at trial in arriving at its custody decision, including the parents' attempts to resolve disagreements, as indicators of their ability to do so when making joint parenting decisions, including Father's bullying of Mother in his futile attempts to save the marriage. For example, Mother requested their custody exchanges be in a public place in an attempt to mitigate Father's caustic arguments with her, but he refused. Father yelled and argued with Mother at exchanges even when she sought to deescalate his tirades in front of the children and

---

[4] At trial, Mother acknowledged she wrongly accused the children and regretted doing so.
[5] Father also repeatedly started arguments over matters not related to the children, like Mother promoting an employee to be safety supervisor over his objections and his belief that Mother was the cause of his unhappiness.

despite her having a neighbor present on one occasion.

Further, there was evidence from which the circuit court reasonably could infer that alternative dispute resolution was unlikely to aid the parents in resolving conflicts during joint decision-making. The evidence was that, although Mother did not want to go to marriage counseling, she acquiesced on the issue and she and Father went to two marital counselors, one time each. Mother reasonably refused to return to the first counselor after he suggested the solution to their problems was them both quitting their jobs and moving away. At the session with the second marriage counselor, Father immediately began blaming her for all his unhappiness and making the same arguments over and over. After that counseling session, Father continued the arguments at home in front of the children and accused mother of lying to the counselor. Mother refused to attend further marriage counseling. The parties then agreed to have an associate pastor at their church "mediate" while they tried to talk. They met with him in person five or six times and included him on their text messages for months. Instead of the pastor's counseling and mediation improving their ability to communicate, their communication got worse. At one in-person meeting with the pastor, Father became so angry that he threw a key at Mother and threated to make the dissolution "nasty." Mother ended up on the floor crying with her hands over her eyes and ears while the pastor escorted Father out of the church. Father acknowledged at trial that he knew he should not say mean things to Mother, but he nevertheless continued to do so both in front of the children and others.

The circuit court could also consider Father's demeanor and behavior at trial as relevant to whether joint legal custody would be appropriate and in the children's best interests. Despite the controlled setting of the courtroom and admonitions to remain silent, Father spoke out during the proceeding to object to Mother's testimony and to disagree with statements by her counsel. Other evidence showed Father's continuing desire to cause difficulties for Mother rather than to work with her. After Father was laid off by her family's business around the time of their separation, he went

6

to work for another contractor who interacts with employees of Mother's company. That interaction caused issues because Father said things to her company's employees to upset Mother, including once in her presence. During trial, Father blamed his depression during the marriage on his objections to the way he was treated by Mother's company due to his concerns over the morality of some conduct of the company, like the company taking the family on a vacation to Arizona and writing some of the expenses off as an annual meeting. He made vague comments about the conduct of the company and suggested if he revealed what he knew from his work at the company that it could get "nasty." Overall and in the light most favorable to the judgment, this evidence does not support the majority opinion's speculation that, once the dissolution proceedings are resolved, Father will be able to compartmentalize his resentment towards Mother regarding their failed business and marriage relationships and be able to function as a parental unit with Mother in decision-making regarding the children.

Finally, evidence relied on by the majority opinion that Father's physical custody of the children several days a week while the parties were separated, during which he performed parental functions and was a better father to the children than he had been previously, was not construed in the light most favorable to the judgment and, even if able to be considered, was relevant to the physical custody award and not evidence of his ability to participate in joint decision-making with Mother. *See A.J.C.*, 602 S.W.3d at 866–67 (quoting *Harris*, 446 S.W.3d at 332 (noting evidence contrary to the judgment should be disregarded)).

Throughout the record, the evidence showed Mother remained calm and focused on the children's needs despite Father's antics, whereas Father exhibited total disregard for the impact of his behavior on the children. Such evidence supports the circuit court's legal custody award by showing his inability to co-parent with Mother in the children's best interests. To the contrary, it is in the children's best interests that there are not constant conflicts and delays over decisions regarding

7

their health, education, and welfare. As shown by the facts recounted throughout this dissent, Father's inability or unwillingness to control himself and his anger, despite knowing better, his children being present, and being in public settings with witnesses, supports the circuit court's judgment that he would not be capable of joint decision-making in the children's best interests.

In reversing the award of sole legal custody to Mother for lack of substantial evidence that the award is in the best interests of the children because it finds Mother and Father can function to make joint decisions for the children, the majority opinion interprets the facts in the light most favorable to that conclusion, rather than the circuit court's judgment. *See id.* While the circuit court might have judged the credibility of the witnesses and weighed the evidence differently to reach the conclusion the majority does, when considered as compelled by the law governing appellate review, there is sufficient evidence in the record to support the circuit court's finding that awarding sole legal custody to Mother is in the children's best interests. Accordingly, I would affirm the circuit court judgment in all respects.

_____
Patricia Breckendridge, Sp. J